**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| CLINT MILLIEN and FELIPE KELLY, individually and on behalf of all others similarly situated, |
| Plaintiffs, |
| v. |
| THE MADISON SQUARE GARDEN COMPANY and MSGN HOLDINGS, L.P., |
| Defendants. |

Case No. 17 Civ. 4000 (AJN)(SN)

FIRST AMENDED FEDERAL
CLASS ACTION COMPLAINT

Jury Trial Demanded

Plaintiffs Clint Millien ("Millien") and Felipe Kelly ("Kelly") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## SUMMARY OF THE CLAIMS

1.      Defendants' answer, filed after they removed this case to federal court, necessitates this amended Complaint.  In the pleadings removed to this court, Plaintiffs had alleged, on their own behalf and that of a proposed class of all others similarly situated, that Defendants The Madison Square Garden Company and MSGN Holdings, L.P. ("MSG" or "Defendants") violated their rights under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* and Article 23-A of the New York State Correction Law, N.Y. Corr. Law § 750 *et seq.* ("Correction Law").  Those claims are also alleged in this amended Complaint.

2.      Specifically, Plaintiffs sought employment at MSG.  They were qualified for the

entry-level jobs, given conditional offers of employment and subjected to MSG's background check process.

3.     Upon information and belief, MSG routinely rejects job applicants based on information contained in background check reports ("consumer reports") that it obtains from consumer reporting agencies ("CRAs") without first providing those individuals with copies of their consumer reports, a statement of rights under the FCRA, or a copy of Article 23-A of the Correction Law.

4.     MSG's failure to provide these documents before taking adverse actions violates section 1681b(b)(3)(A) of the FCRA, which renders illegal the use of consumer reports to make adverse employment decisions without the employer first providing the individual who is the subject of the report with sufficient and timely notification of its intent to take an adverse action, a copy of the report, and a summary of rights under the FCRA.  *See* 15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).  It also violates N.Y. Gen. Bus. Law § 380-g(d), which requires that employers provide individuals with a copy of Article 23-A of the Correction Law when a consumer report has been procured on them.

5.     In turn, MSG's denial of employment to job applicants based on information contained in consumer reports, without first providing that information to job applicants and allowing them to dispute or otherwise explain that information, is a per se violation of the NYCHRL, which requires that employers evaluate the eight factors laid out in the Correction Law before denying employment on the basis of a criminal history.

6.     MSG's answer, however, seeks to avoid a court ruling on these issues.  Without giving the plaintiffs an opportunity to respond, MSG's answer alleges it determined not to hire Plaintiffs because it claimed they had falsified their applications by failing to reveal

misdemeanor convictions.  *See* ECF No. 12 (Answer).  This conduct violates the NYCHRL and FCRA by failing to give each of the Plaintiffs individualized consideration and the opportunity to either contradict the consumer reports upon which MSG's actions were based or to explain that the responses in their applications were not based upon falsifying their answers.

7.     In addition, because plaintiff Millien is Black and plaintiff Kelly is Black and Latino, and social science studies have clearly established that Blacks and Latinos have criminal records at significantly higher rates than Whites, their rejection from work for which they were qualified violates the NYCHRL, requiring plaintiffs to add this  cause of action to their amended Complaint.

8.     MSG has a policy requiring applicants to detail complete criminal history information and denies employment to applicants who it alleges did not "disclose convictions on their job application materials[,]" ECF No. 12 (Answer) at 1.  That policy does not have a "demonstrable relationship to successful performance of the jobs for which [the policy] used," *Griggs v. Dukes Power, Co.*, 401 U.S. 424, 431(1971), and is otherwise an invalid screening device rendering it improper under the NYCHRL.

9.     MSG's violations of the law cause concrete injury by, among other examples, invading individuals' privacy and depriving them of crucial information that Congress and the New York legislature intended that they possess so that, for example, applicants could explain their conviction histories, correct inaccurate or incomplete information, or otherwise challenge their rejections of employment.

10.     MSG has willfully violated the laws Plaintiffs have set forth in this amended Complaint.

11.     On behalf of themselves and others similarly situated, Plaintiffs seek statutory

damages; exemplary and punitive damages; injunctive and/or declaratory relief, pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses associated with this action.

12.     Through this lawsuit, Plaintiffs will show that the conduct outlined in their Complaint clearly violates the stated public policy of New York and the Unites States to remove barriers to employment for thousands of persons who have paid the penalties for any crimes they may have committed.

## STATUTORY BACKGROUND

13.     "The public policy of [New York] state [and City], as expressed in [the Correction Law], [is] to encourage the licensure and employment of persons previously convicted of one or more criminal offenses."  N.Y. Corr. Law § 753(1)(a).

14.     When the Correction Law was enacted in 1976, both the legislature and the Governor recognized the need to "reverse the long history of employment discrimination against" people with criminal records by "eliminating many of the obstacles to employment." Governor's Bill Jacket, 1976, Ch. 931 Memorandum of Senator Ralph J. Marino & Assemblyman Stanley Fink in Support of S. 4222-C and A. 5393-C.

15.     As articulated in the NYCHRL, "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record."  N.Y.C. Admin. Code § 8-101.

16.     Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate the City's clearly articulated policy—as do requirements that applicants must disclose their complete and accurate conviction histories before MSG purchases a

consumer report from a CRA, which because of the way criminal records are kept, can be unclear and confusing.

17.     Such acts of discrimination "menace the institutions and foundation of a free democratic state."   N.Y.C. Admin. Code § 8-101.

18.     The use of these arbitrary pre-employment bans also results in discrimination on the basis of race, ethnicity, color, and national origin because it imports the racial and ethnic disparities in the criminal justice system into the employment application process.

19.     For these, among other reasons, the NYCHRL forbids companies from denying employment, or aiding and abetting the denial of employment, simply because a job applicant has a criminal record.  Instead, companies must engage in an individualized evaluation of each of the factors outlined in Article 23-A of the Correction Law.

20.     The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumers' right to privacy," FCRA § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. FCRA § 1681(b).

21.     Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over Plaintiffs' claims pursuant to 15 U.S.C. § 1681p, which permits claims under the FCRA to be brought in any "court of competent jurisdiction" and 28 U.S.C. 1331.   This Court also has jurisdiction over Plaintiffs' FCRA, NY FCRA, and

NYCHRL claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because MSG is headquartered and resides in this District and because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

24.     After being originally filed in the Commercial Division of the New York Supreme Court, MSG removed this case to federal court because the Court had federal question jurisdiction and venue and supplemental jurisdiction over "Plaintiffs' NY Claim and NYCHRL Claim[.]"  ECF No. 1 (Notice of Removal) at 4.

25.     Before being removed, this case was properly brought in the Commercial Division of the New York Supreme Court because, upon information and belief, the damages of Plaintiffs and the putative class, exclusive of punitive damages, interests, costs, disbursements and counsel fees claimed, exceed the monetary threshold for New York County of $500,000.

26.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

27.     Contemporaneously with the filing of this amended Complaint, Plaintiffs have mailed a copy of the amended Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## PARTIES

### Plaintiffs

28.     Plaintiffs and the proposed Class Members they seek to represent are "consumers" as defined by the FCRA and NY FCRA and are each a "person" within the meaning of the NYCHRL.

29.     Plaintiffs each have criminal convictions.

30.     Plaintiff Millien is a resident of Essex County, New Jersey.

31.     Plaintiff Millien is a Black man.

32.     Plaintiff Kelly is a resident of Bronx County, New York.

33.     Plaintiff Kelly is a Black and Latino man.

**Defendants**

34.     The Madison Square Garden Company is a corporation organized under the laws of the State of Delaware and maintains its headquarters at Two Pennsylvania Plaza, New York, NY.

35.     MSGN Holdings, L.P. is registered as a Delaware limited partnership with a principal place of business at 11 Pennsylvania Plaza, New York, New York 10001.

36.     At all relevant times, The Madison Square Garden Company and MSGN Holdings, L.P. have each been a "person" using "consumer reports" of Plaintiffs and proposed Class Members for "employment purposes" and have taken "adverse action" against Plaintiffs and similarly situated applicants, as defined by the FCRA and NY FCRA, for example by preventing them from explaining or challenging their rejections of employment.  These adverse actions have been based wholly or in part on those consumer reports.

37.     At all relevant times, The Madison Square Garden Company and MSGN Holdings, L.P. have been aware of the requirements of the FCRA and NY FCRA, and yet have disregarded those requirements.

38.     At all relevant times, The Madison Square Garden Company and MSGN Holdings, L.P.  have been employers as defined by the NYCHRL, and private employers as defined by the Correction Law.

## STATEMENT OF FACTS

**Clint Millien**

39.     On or about July 13, 2015, Mr. Millien spoke with a recruiter employed by MSG about job openings with the company.  The recruiter encouraged Mr. Millien to apply, based on his previous work experience.

40.      Mr. Millien subsequently applied to work at MSG for positions in food preparation through MSG's online portal.  Either on the application, or in a separate document, MSG asked Mr. Millien about his criminal history.  Mr. Millien was confused by MSG's forms, and only disclosed one of his two misdemeanor convictions, which he reasonably believed was the only information MSG was asking about.

41.     On or about July 14, 2015, Mr. Millien was interviewed by an MSG representative for approximately thirty minutes.

42.     The interview was successful, and at its conclusion, Mr. Millien was told that he was conditionally hired but that MSG would conduct a background check.  He also was told that he would have an orientation in early August and that he would start working for MSG after the orientation.

43.     Later that day, Mr. Millien received an email from MSG with the subject line "Offer Documents."  A link in the email led to documents containing information about Mr. Millien's employment with MSG, including that he would be paid approximately $11.00 an hour for a position in "food prep."

44.     Mr. Millien received a second email from MSG on July 14, 2015, instructing him to take a drug test.  Following those instructions, Mr. Millien took a drug test and passed it.

45.     At some point during this process, MSG obtained a consumer report on Mr.

Millien that contained a criminal record check.

46.     In or around July or August, 2015, after MSG had obtained a consumer report, Mr. Millien received a phone call from an MSG employee informing him that MSG was rescinding its employment offer as a result of its background check.

47.     Prior to MSG's adverse employment determination, Mr. Millien did not receive a copy of his consumer report.

48.     Prior to MSG's adverse employment determination, Mr. Millien did not receive a statement of his rights under the Fair Credit Reporting Act.

49.     Prior to MSG's adverse employment determination, Mr. Millien did not receive a copy of Article 23-A of the New York Correction Law.

50.     During the entire relevant period, Mr. Millien resided at the same address known to MSG.

51.     On approximately May 5, 2017, approximately one year and a half after MSG's adverse employment decision and only after filing this lawsuit, Mr. Millien received a copy of his consumer report and a statement of his rights under the Fair Credit Reporting Act.

52.     During the interview process, and afterwards, MSG never obtained information from Mr. Millien which would enable it to fully evaluate the factors laid out in Section 753 of the Correction Law.  For example, after reviewing Mr. Millien's background check, MSG never asked Mr. Millien for information regarding the circumstances of his convictions or evidence of Mr. Millien's rehabilitation or good conduct.

53.     As part of its Answer, MSG now states for the first time that it denied Mr. Millien employment because he purportedly "failed to disclose criminal convictions on [his] job application materials."  ECF No. 12 (Answer) at 1.

54.     MSG never asked Mr. Millien whether his consumer report was accurate or to explain his purported failure to disclose part of his criminal history.

**Felipe Kelly**

55.     In approximately July 2015, Mr. Kelly applied online for a food preparation position with MSG.

56.     Mr. Kelly was subsequently interviewed by an MSG representative.

57.     The interview was successful, and at its conclusion, Mr. Kelly was told that he was conditionally hired but that MSG would conduct a background check.

58.     After that interview, Mr. Kelly was instructed to take a drug test, which he passed, and was emailed a schedule for orientation at MSG.

59.     At some point during this process, MSG obtained a consumer report on Mr. Kelly that contained a criminal record check.

60.     After MSG obtained a consumer report, Mr. Kelly received a phone call from an MSG employee informing him that MSG was rescinding its job offer as a result of its background check.

61.     Prior to MSG's adverse employment determination, Mr. Kelly had not received a copy of his consumer report.

62.     Prior to MSG's adverse employment determination, Mr. Kelly had not received a statement of his rights under the Fair Credit Reporting Act.

63.     Prior to MSG's adverse employment determination, Mr. Kelly had not received a copy of Article 23-A of the New York Correction Law.

64.     After telling Mr. Kelly that MSG was rescinding its job offer, the MSG employee told Mr. Kelly that he would receive something in the mail.

10

65.     Approximately two weeks after the call rescinding the job offer, Mr. Kelly received a copy of his consumer report.

66.     During the entire relevant period, Mr. Kelly resided at the same address known to MSG.

67.     During the interview process, and afterwards, MSG never obtained information from Mr. Kelly which would enable it to fully evaluate the factors laid out in Section 753 of the Correction Law.  For example, after reviewing Mr. Kelly's consumer report, MSG never asked Mr. Kelly for information regarding the circumstances of his convictions or evidence of Mr. Kelly's rehabilitation or good conduct.

68.     As part of its Answer, MSG now states for the first time in this ongoing litigation that it denied Mr. Kelly employment because he purportedly "failed to disclose criminal convictions on [his] job application materials."  ECF No. 12 (Answer) at 1.

69.     MSG never asked Mr. Kelly whether his consumer report was accurate or to explain his purported failure to disclose part of his criminal history.

**Factual Allegations Common to All Class Members**

***The NYCHRL Article 23-A Claims***

70.     The NYCHRL states that no employer may "deny employment to any person" based on a criminal conviction "when such denial or adverse action is in violation of the provisions of article twenty-three-a of the correction law."  N.Y.C. Admin. Code § 8-107 (10).

71.     Article 23-A of the Correction Law prohibits an employer from denying employment to any person by virtue of their criminal record unless the employer can meet its burden of demonstrating one of two exceptions:

> (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the

individual; or

(2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

N.Y. Correct. Law § 752.

72.    Article 23-A of the Correction Law further requires that before taking any adverse action on the basis of a criminal record, the employer must consider all the following factors:

(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d) The time which has elapsed since the occurrence of the criminal offense or offenses.

(e) The age of the person at the time of occurrence of the criminal offense or offenses.

(f) The seriousness of the offense or offenses.

(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

73.    It is impossible for an employer to conduct the legally required evaluation of all Article 23-A factors without first engaging in a conversation with the prospective candidate before making an employment determination.  *See* N.Y. Correct. Law § 753.

74.    For this reason, among others, the NYCHRL forbids companies from denying

employment simply because a job applicant has a criminal record.  Instead, companies must engage in an evaluation of the factors outlined in the Correction Law before making an employment determination.

75.     Despite knowing of its obligations under the NYCHRL, MSG has denied, and continues to deny, employment to job applicants, without undertaking the inquiry required by New York Law.

76.     Upon information and belief, MSG's denial of employment to job applicants based on information contained in consumer reports, without first providing that information to job applicants and allowing them to dispute or otherwise explain that information, is a per se violation of the NYCHRL.

77.     For example, although not a subject to this suit, the New York City Commission on Human Rights has put out guidance about the recently enacted Fair Chance Act.  *See* https://www1.nyc.gov/site/cchr/law/fair-chance-act.page.  That guidance explains that "[e]mployers must carefully conduct the Article 23-A analysis."  *Id.*  This means that "[o]nce an employer extends a conditional offer and learns of an applicant's criminal record, it must solicit the information necessary to properly consider each Article 23-A factor, including the applicant's evidence of rehabilitation."  *Id.*  By denying employment to job applicants before soliciting such information, MSG violated the NYCHRL.  These obligations existed before the enactment of the Fair Chance Act.

78.     MSG has acted consciously in breaching its known duties and depriving Plaintiff Millien and other job applicants of their rights under the NYCHRL and the Correction Law.

79.     At a minimum, MSG's conduct has been reckless in failing to make an appropriate inquiry to ascertain its obligations under the NYCHRL and the Correction Law.

80.     The ability to find employment is an essential aspect of reentering society for people with criminal histories.  Recidivism declines when those individuals have viable employment prospects and other stabilizing resources in their communities.  MSG's policy of discriminating against individuals with criminal records frustrates such public policy objectives.

***The NYCHRL Disparate Impact Claims***

81.     MSG's policy of terminating applicants who purportedly fail to provide a completely accurate criminal history on their job application is an employment policy that disparately impacts Blacks and Latinos.

82.     In essence, MSG's application process and policy of termination for purported falsification on applications effectively imports the acute racial disparities in the criminal justice system into the employment process, thereby multiplying the negative impact on Black and Latino job applicants with criminal histories—like Plaintiffs.

83.     According to conservative estimates, 65 million Americans (one in every four adults) have a criminal history.[1]  With 12 to 14 million arrests annually, the percent of the American population with a criminal history is growing rapidly.[2]

84.     With regard to race, nearly 60% of U.S. prisoners are Black or Latino, although these groups represent less than 30% of the overall U.S. population.[3]  This means that one out of every three Black males born today will go to prison, as will one out of every six Latino males,

---

[1]     Michelle Natividad Rodriguez & Maurice Emsellem, NELP*, 65 Million "Need Not Apply": The Case For Reforming Criminal Background Checks For Employment* 3 (2011), *available at* http://www.nelp.org/page/-/65_million_need_not_apply.pdf?nocdn=1.

[2]     FBI, U.S. Dep't of Justice, *Crime in the United States*, *2009* 1 (2009), *available at* http://www2.fbi.gov/ucr/cius2009/arrests/index.html; *see also* Robert Brame et al., *Cumulative Prevalence of Arrest from Ages 8 to 23 in a National Sample*, 129 PEDIATRICS 21, 25 (2012) (roughly one in every three Americans has been arrested by age twenty-three).

[3]     Leah Sakala, *Breaking Down Mass Incarceration in the 2010 Census: State-by-State Incarceration Rates by Race/Ethnicity*, PRISON POL'Y INITIATIVE (May 28, 2014), http://www.prisonpolicy.org/reports/rates.html.

compared to just one out of every seventeen White males.[4]

85.     Moreover, while 1.6 million persons were held in U.S. prisons in 2010, there were more than eight times that number of arrests (roughly 13.1 million).[5]  This number is significant given that information produced in routine criminal background checks often extends beyond convictions that yield prison time, and includes arrests that never led to conviction.

86.     Compounding the racial disparities in criminal arrests and convictions is proven employer bias against people with criminal records.  For example, audit studies conducted by researchers at Harvard and Princeton Universities found that Blacks and Latinos with criminal records were particularly disadvantaged in the job market when compared to Whites with criminal records.[6]

87.     With little or no scientific justification, MSG disqualifies applicants, including Plaintiffs, whom it claims falsified their answers with regard to criminal records, without making any attempt to speak to the applicants about their answers or to determine whether their information with regard to criminal convictions was correct.

88.     MSG imposes this policy and practice, requiring that applicants self-disclose their entire criminal history, and denying employment to applicants like Plaintiffs who purportedly fail to do so (at least in part) on the  argument that this omission shows a lack of honesty or trustworthiness.  *See* ECF No. 12 (Answer) at 17 ("Plaintiffs' claims under the NYCHRL are

---

[4]     Marc Mauer, *Addressing Racial Disparities in Incarceration*, 91 PRISON J. 87S, 88S (2011).

[5]     FBI, U.S. Dep't of Justice, 2011 *Crime in the United States, 2010*, http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/persons-arrested.

[6]     Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 785-86 (2009); Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 ANNALS AM. ACAD. POL. & SOC. SCI. 195, 199 (2009); Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937, 955-61 (2003).

barred because they intentionally misrepresented their criminal background.").

89.     This policy and practice disproportionately impacts Black and Latino applicants, who are more likely to have interactions with the criminal justice system requiring disclosure than White applicants.

90.     MSG's requirement that applicants self-disclose their criminal histories screens out individuals who would be eligible for employment according to any rational and fair system of determining edibility for employment.

91.     MSG's requirement that applicants self-disclose their entire criminal history is not an accurate proxy for determining an applicant's criminal history, honesty or trustworthiness.

92.     MSG's screening process is convoluted and confusing, and applicants are not clearly informed that they need to disclose all of their convictions.  For example, although Plaintiff Millien routinely discloses *both* of his convictions when applying for jobs, he only disclosed one when applying for MSG because he was confused by MSG's questions about criminal history, and did not realize he had to disclose both.

93.     Moreover, the criminal justice system is complex, with technical and varied terminology, which leads many persons with criminal records not to realize the full extent or proper phrasing of their criminal history on job applications.  A criminal record is not comprised of a single document. "Information about arrestees, [suspects,] defendants, pre-trial detainees, probationers, inmates, and parolees is recorded in numerous and over lapping files, records, and databases that include: rap sheets created by police and nationally integrated rap sheet systems; court records; police investigative and intelligence information shared at the local, state, and

federal levels; and other private databases[.]"[7]

94.     Because of this, experts agree that "[l]egal ambiguity and complexity characterizes the practice of checking criminal records, as the law and practice varies significantly across states."[8]

95.     Thus, MSG's requirement that applicants must disclose entirely complete and accurate criminal histories sets up a situation whereby applicants are terminated or not hired because they purportedly fail to accurately disclose their convictions based on confusion as to the meaning of their charges and convictions, or other reasons such as incompleteness (for example, a failure to seal certain records despite court orders, dismissals of charges, or acquittals). Because of the disparities in Blacks and Latinos with criminal record histories, this employment policy disparately impacts those racial groups.

96.     In turn, having a conviction (whether disclosed or not), is not an accurate proxy for determining whether an applicant would be able to perform the duties of the job. There are no reliable studies or empirical data to suggest that applicants with criminal records are more or less likely to engage in terminable offenses.[9]

97.     At the same time, there are less discriminatory alternatives that would have better achieved MSG's legitimate hiring interests.

**The Fair Credit Reporting Act**

98.     The FCRA was enacted in 1970. Through its passage, Congress required that

---

[7]     Nairuby L. Beckles, *The Criminal "DNA" Footprint: Viewing the Mark of Criminal Records Through the Legal Lens of the Genetic Information Non-Discrimination Act*, 59 How. L.J. 485, 492–95 (2016).

[8]     Sarah Esther Lageson et. al., *Legal Ambiguity in Managerial Assessments of Criminal Records*, 40 L. & Soc. Inquiry 175, 176 (2015).

[9]     *See, e.g.,* Ian B. Petersen, *Toward True Fair-Chance Hiring: Balancing Stakeholder Interests and Reality in Regulating Criminal Background Checks*, 94 Tex. L. Rev. 175, 187-88 (2015).

consumer reports be "fair and equitable to the consumer" and protect a "consumer's right to privacy" through "adopt[ing] reasonable procedures" to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of information contained within consumer reports.  15 U.S.C. §§ 1681(a)(4)-(b).

99.    Congress also required that "consumer reports" explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

100.    Through the FCRA, Congress requires that "before taking any adverse action based in whole or in part on [a consumer report]," the employer taking the adverse action must provide "the consumer to whom the report relates" with:

> (i)    a copy of the report; and

> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3)[.]

15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

101.    The FCRA defines adverse action as both "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," and "an action taken or determination that is . . . adverse to the interests of the consumer."  15 U.S.C. § 1681a(k)(1)(B)(ii) and (iv).

102.    Upon information and belief, MSG has routinely and systematically failed to provide Plaintiffs and other job applicants with their consumer report and a summary of their rights under the FCRA before taking adverse actions against them.

103.    In Congress's judgment, an employer's failure to provide a consumer with his or her consumer report and a summary of his or her rights under the FCRA are both harms sufficient to establish Article III standing.

104.    Without notice that a consumer report is going to be used to take adverse action against them, job applicants are hindered in their ability to preserve their privacy, provide context for their criminal histories, or to correct errors or other problems with the report.

105.    MSG's failure to provide this information also created the risk that Plaintiffs and other job applicants would fail to seek to vindicate their right under the FCRA because they would not know of those rights.[10]

106.    MSG has acted willfully in violating the FCRA.  MSG knew or should have known its obligations under the FCRA.  These obligations are well-established by the plain language of the FCRA, in the promulgations and opinion letters of the Federal Trade Commission, and in longstanding case law.   Further, MSG is required to certify to the consumer reporting agency that it will comply with the FCRA's stand-alone disclosure and authorization requirements.  *See* 15 U.S.C. § 1681b(b)(1)(A).  Willfulness, as well as MSG's control over the distribution of such reports, is further shown because MSG has only sent Mr. Millien a copy of his consumer report and FCRA rights after Mr. Millien was forced to file a lawsuit.

107.    Despite MSG's awareness of its legal obligations, it has acted recklessly and willfully in breaching its known duties and depriving Plaintiffs and other job applicants of their rights under the FCRA.

*The NY FCRA*

108.    The NY FCRA requires that:

When a consumer reporting agency provides a consumer report that contains criminal conviction information, permitted by paragraph one of subdivision (a) of section three hundred eighty-j of this article, to a user, the person, firm,

---

[10]    To the extent MSG argues that it took adverse actions based on Plaintiffs' alleged failures to disclose convictions, those adverse actions were still based on the consumer reports MSG ran on Plaintiffs, which revealed the alleged discrepancies that were the purported basis for MSG's denials of employment.

corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. Gen. Bus. Law § 380-g(d).

109.    "The public policy of [New York] state, as expressed in [its Correction Law], [is] to encourage the licensure and employment of persons previously convicted of one or more criminal offenses."  N.Y. Corr. Law § 753(1)(a).

110.    Upon information and belief, MSG has routinely and systematically failed to provide Plaintiffs and other job applicants with a copy of Article 23-A of the Correction Law.

111.    This has caused Plaintiffs and other job applicants concrete harm because it has denied them an opportunity to learn of their rights under Article 23-A of the Correction Law and created the risk of future harm.

112.    For example, as discussed above, under the Correction Law, MSG cannot deny employment to an individual "when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless" MSG shows "a direct relationship" between the conviction(s) and the job or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public."  N.Y. Corr. Law § 752.

113.    Instead, MSG must consider all eight factors laid out in Section 753 of the Correction Law and whether the individual has a certificate of relief from disabilities or a certificate of good conduct.  N.Y. Corr. Law § 753.

114.    In turn, Section 754 of the Correction law allows an individual "previously convicted of one or more criminal offenses" to request a written explanation for the employer's denial of employment, which the employer is required to provide within 30 days of the request—

providing applicants with crucial information as to the basis for the job denial.  N.Y. Corr. Law § 754.

115.    MSG's failure to provide Plaintiffs and other job applicants with a copy of Article 23-A of the Correction law denied them information about their legal right to be free from discrimination and remedies for that discrimination once it had occurred.

116.    MSG's failure to provide this information also created the risk that Plaintiffs and other job applicants would fail to seek to vindicate their right to be free from discrimination— either from MSG's denial of employment or the denial of employment by another employer.

117.    Given that the time for an individual to bring a claim against MSG through the New York City Commission on Human Rights ("NYCCHR") is only one year, *see* N.Y.C. Admin. Code § 8-109(e) (stating that commission lacks jurisdiction over complaints "filed more than one year after the alleged unlawful discriminatory practice or act of discriminatory harassment or violence . . . occurred"); N.Y. Corr. Law § 755(2) (explaining that claims can be brought against private employers, *inter alia*, through NYCCHR), many putative class members have had their choice of venues diminished through MSG's actions, causing further concrete harm.

118.    MSG's violation of the NY FCRA frustrates New York's public policy to increase the employment of persons with criminal convictions.  *See* N.Y. Corr. Law § 753(1)(a).

119.    MSG has acted willfully in violating the requirements of the NY FCRA.  MSG knew or should have known about its obligations under the NY FCRA.  These obligations are well-established by the longstanding and plain language of the NY FCRA.

120.     Despite MSG's awareness of its legal obligations, it has acted recklessly and

willfully in breaching its known duties and depriving Plaintiffs and other job applicants of their

rights under the FCRA.

## CLASS ACTION ALLEGATIONS

121.     Plaintiffs bring this case as a proposed Class action pursuant to the New York

Civil Practice Law and Rules on behalf of themselves and three classes of persons (collectively,

the "Classes").

122.     Plaintiffs assert the First Cause of Action against MSG on behalf of the "FCRA

Consumer Report Class" defined as follows:

> **FCRA Consumer Report Class:** All individuals who, during the applicable five
> year statute of limitations period, were subjected to an adverse action by MSG at
> least in part because of information in their consumer reports without first being
> provided with a copy of their consumer report and/or a statement of their rights
> under the FCRA.

123.     Plaintiffs assert the Second Cause of Action against MSG on behalf of the "NY

FCRA Class" defined as follows:

> **NY FCRA Class**: All individuals who, during the applicable two year statute of
> limitations period, had consumer reports requested about them by MSG and were
> not provided with a copy of Article twenty-three-A of the Correction Law.

124.     Plaintiffs assert the Third Cause of Action against MSG on behalf of the

"Criminal History Discrimination Class" defined as follows:

> **Criminal History Discrimination Class**:   All individuals who, during the
> applicable three year statute of limitations period, were denied employment based
> in whole or in part on criminal offense information contained in a consumer
> report without MSG having performed a complete New York Correction Law
> Article 23-A analysis, as required by N.Y.C. Admin. Code § 8-107(10).

125.     Plaintiffs assert the Fourth Cause of Action against MSG on behalf of the "Self-

Disclosure Disparate Impact Class" defined as follows:

**Self-Disclosure Disparate Impact Class:** All Black and Latino individuals who, during the applicable three year statute of limitations period, were denied employment based in whole or in part because of a purported failure to fully disclose conviction history on MSG's application.

126. The members of the FCRA Consumer Report Class, NY FCRA Class, Criminal History Discrimination Class and Self-Disclosure Disparate Impact Class are collectively referred to as "Class Members."

127. Plaintiffs reserve the right to amend the definition of above-defined classes based on discovery or legal developments.

128. The Class Members identified herein are so numerous that joinder of all members is impracticable. MSG is a large New York employer. The number of job applicants harmed by MSG's violations of the law is far greater than feasibly could be addressed through joinder. The precise number is uniquely within Defendants' possession, and Class Members may be notified of the pendency of this action by published and/or mailed notice.

129. There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members. Common legal and factual questions include, among others:

(a) whether Defendants violated the FCRA by failing to provide Plaintiffs and the FCRA Consumer Report Class with a copy of their consumer report before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(i);

(b) whether Defendants violated the FCRA by failing to provide Plaintiffs and the FCRA Consumer Report Class with a written description of their rights under the FCRA before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii);

(c) whether Defendants' actions caused informational injury to Plaintiffs and Class Members, and whether Defendants' actions violated the privacy of Plaintiffs and Class Members;

(d)     whether Defendants violated the NY FCRA by failing to provide Plaintiffs and the NY FCRA Class with a copy of Article 23-A of the Correction Law, in violation of N.Y. Gen. Bus. Law § 380-g(d);

(e)     whether Defendants were willful in their noncompliance with the requirements of the FCRA and NY FCRA;

(f)     whether Defendants violated the NYCHRL and the Correction Law when denying employment to Plaintiffs and the Criminal History Discrimination Class;

(g)     whether Defendants violated the NYCHRL when denying employment to Plaintiffs and the Self Disclosure Disparate Impact Class based on a purported failure to full disclose conviction history;

(h)     whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class Members are warranted; and

(i)     whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

130.    Plaintiffs are members of the classes they seek to represent.  MSG took adverse action against Plaintiffs without proper consideration of the factors laid out in the Correction Law or for purportedly failing to self-disclose conviction histories.  MSG also took adverse action against Plaintiffs before first providing them with a copy of their consumer reports, a written summary of their rights under the FCRA, or a copy of Article 23-A of the Correction Law.

131.    Plaintiffs' claims are typical of the claims of the classes they seek to represent. Upon information and belief, it is MSG's standard practice to take adverse actions against applicants: (1) without properly considering the factors laid out in the Correction Law; or (2) because of a purported failure to self-disclose conviction histories.  MSG's standard practice also is to take adverse actions against applications without first providing them with a copy of their consumer reports, a written summary of their rights under the FCRA, or a copy of Article 23-A

of the Correction Law.  Plaintiffs are entitled to relief under the same causes of action as other

Class Members.

132.    Plaintiffs will fairly and adequately represent and protect the interests of Class

Members because their interests coincide with, and are not antagonistic to, the interests of the

Class Members they seek to represent.  Plaintiffs have retained Counsel who are competent and

experienced in complex class actions, including litigation pertaining to criminal background

checks, the Correction Law, FCRA and NY FCRA, disparate impact litigation, other

employment litigation, and the intersection thereof.  There is no conflict between Plaintiffs and

the Class Members.

133.    Class certification is appropriate for the FCRA Consumer Report Class under Fed.

R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions

affecting only individual Class Members.  For example, MSG has maintained a common policy

of taking adverse action without first providing applicants with copies of their consumer reports

and/or a written description of their rights under the FCRA.  Moreover, a class action is superior

to other available methods for the fair and efficient adjudication of this litigation.  Class

Members have been damaged and are entitled to recovery as a result of Defendants' uniform

policies and practices.  Because MSG has maintained a common policy of failing to properly

inform Class Members of their rights under the FCRA before taking adverse actions, many Class

Members are likely unaware that their rights have been violated.

134.    Class certification is appropriate for the NY FCRA Class under Fed. Civ. P.

23(b)(3) because common questions of fact and law predominate over any questions affecting

only individual Class Members.  For example, MSG has maintained a common policy of

obtaining consumer reports from individuals without providing them with a copy of Article 23-A

of the Correction Law.  Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.  Because MSG has maintained a common policy of failing to properly inform Class Members of their rights under the NY FCRA, many Class Members are likely unaware that their rights have been violated.

135.    Class certification is appropriate for the Criminal History Discrimination Class under Fed. R. Civ. P. 23(b)(2) because MSG has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole (or as to a specific subset of issues). The Class Members are entitled to declaratory and injunctive relief to end MSG's common, uniform, unfair, and discriminatory policies and practices.

136.    Class certification is also appropriate for the Criminal History Discrimination Class under Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members.  For example, MSG has maintained a common policy of taking adverse action without first properly considering the mandatory factors laid out in the Correction Law.  Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.

137.    Class certification is appropriate for the Self-Disclosure Disparate Impact Class under Fed. R. Civ. P. 23(b)(2) because MSG has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole (or as to a specific subset of issues). The Class Members are

entitled to declaratory and injunctive relief to end MSG's common, uniform, unfair, and discriminatory policies and practices.

138.     Class certification is also appropriate for the Self-Disclosure Disparate Impact Class under Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members.  For example, MSG has maintained a common policy of denying employment based on a purported failure to fully disclose conviction histories.  Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices.

139.     The amount of each Class Member's individual claim is small compared to the expense and burden of individual prosecution of this litigation.  The FCRA has statutorily specified damages, which Class Members will prove at trial are warranted, that will render calculation of damages for Class Members straightforward.  The propriety and amount of exemplary and punitive damages are based on Defendants' conduct, making these issues common to Class Members.  Questions as to the propriety and scope of declaratory and injunctive relief regarding Defendants' conduct will be common to Class Members.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**MSG's Failure to Provide Consumer Reports and FCRA Notices Before Adverse Actions (15 U.S.C. § 1681b(b)(3)(A), Brought by Plaintiffs on Behalf of Themselves and the FCRA Consumer Report Class)**

140.     Plaintiffs, on behalf of themselves and the FCRA Consumer Report Class, incorporate the preceding paragraphs as alleged above.

141.    MSG violated the FCRA by taking adverse employment actions against Plaintiffs and the FCRA Consumer Report Class based in whole or in part on the information contained within their consumer reports.

142.    Before taking these adverse employment actions, MSG failed to provide Plaintiffs and the FCRA Consumer Report Class with a copy of their consumer reports and a reasonable amount of time to respond.

143.    Before taking these adverse employment actions, MSG failed to provide Plaintiffs and the FCRA Consumer Report Class with a written description of their rights under the FCRA.

144.    These failures are each separate violations of the FCRA.

145.    MSG's policy caused concrete injury (including the risk of harm) to Plaintiffs and the FCRA Consumer Report Class, including because they could not:

    (a) evaluate information contained in the consumer reports to ensure accuracy;

    (b) challenge and correct that information;

    (c) explain the circumstances surrounding that information (even if accurate);

    (d) explain why information reported should not preclude employment;

    (e) explain why information that was different on the consumer report than the application should not preclude employment; and

    (f) learn of their rights and opportunities under the FCRA, including the opportunity to bring suit under the FCRA.

146.    MSG acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiffs and the FCRA Disclosure Class.

147.    MSG's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A).

148.    MSG's willful conduct is still further reflected by the following:

(a) The FCRA was enacted in 1970, and Defendants have had years to become compliant;

(b) Defendants' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c) Defendants repeatedly and routinely took adverse action based in whole or in part on information contained in a consumer report before providing consumers with a copy of the consumer report or FCRA rights;

(d) Defendants only sent Mr. Millien a copy of his consumer report and statement of rights after he filed this suit and almost two years after denying him employment; and

(e) By adopting such a policy, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

149.    As a result of MSG's actions, Plaintiffs and the FCRA Consumer Report Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action, and have had their privacy invaded.

150.    MSG's willful conduct makes it liable for statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**SECOND CLAIM FOR RELIEF**
**MSG's Failure to Provide Copies of Article 23-a**
**(N.Y. Gen. Bus. Law § 380-g(d), Brought by Plaintiffs on Behalf of Themselves**
**and the NY FCRA Class)**

151.    Plaintiffs, on behalf of themselves and the NY FCRA Class, incorporate the preceding paragraphs as alleged above.

152.    MSG violated the NY FCRA by procuring consumer reports from Plaintiffs and the NY FCRA Class without providing them with copies of Article 23-A of the Correction Law.

153. MSG's policy caused concrete injury (including the risk of harm) to Plaintiffs and the NY FCRA Class, including because they could not learn of their rights and opportunities under the NY FCRA.

154. MSG acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiffs and the FCRA Disclosure Class.

155. MSG's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in N.Y. Gen. Bus. Law § 380-g(d).

156. MSG's willful conduct is still further reflected by the following:

(a) Defendants have had years to become compliant with the NY FCRA;

(b) Defendants repeatedly and routinely failed to provide individuals with copies of Article 23-A as required by the NY FCRA; and

(c) By adopting such a policy, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

157. As a result of MSG's actions, Plaintiffs and the NY FCRA Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action.

158. MSG's willful and/or negligent conduct makes it liable for actual damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l and N.Y. Gen. Bus. Law § 380-m.

## THIRD CLAIM FOR RELIEF
### MSG's Discriminatory Denial of Employment
### (N.Y.C. Admin. Code. § 8-101 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the Criminal History Discrimination Class)

159. Plaintiffs, on behalf of themselves and the Criminal History Discrimination Class, incorporate the preceding paragraphs as alleged above.

160.    MSG denied employment to Plaintiffs and the Criminal History Discrimination Class based in whole or in part on the criminal history information contained within their consumer reports.

161.    Before denying employment to Plaintiffs and the Criminal History Discrimination Class, MSG failed to conduct a proper inquiry into the factors outlined in Article 23-A of the Correction Law, in violation of N.Y.C. Admin. Code § 8-107(10).

162.    As a result of MSG's actions, Plaintiffs and the Criminal History Discrimination Class have been deprived of their rights and have lost employment opportunities, earnings and other employment benefits.

163.    Plaintiffs and the Criminal History Discrimination Class also seek injunctive and declaratory relief to correct MSG's discriminatory policies and practices.

**FOURTH CLAIM FOR RELIEF**
**MSG's Discriminatory Denial of Employment**
**(N.Y.C. Admin. Code. § 8-101 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the Self-Disclosure Disparate Impact Class)**

164.    Plaintiffs, on behalf of themselves and the Self-Disclosure Disparate Impact Class, incorporate the preceding paragraphs as alleged above.

165.    MSG denied employment to Plaintiffs and the Self-Disclosure Disparate Impact Class based in whole or in part on a purported failure to fully disclose conviction histories on their MSG applications.

166.    MSG's policy and practice has a disparate impact on Blacks and Latinos, who are more likely to have criminal histories that MSG requires to be disclosed.

167.    MSG's policy and practice creates a barrier to employment that is neither job-related nor consistent with business necessity.

168.    Moreover, there are less discriminatory alternatives that would have better achieved any legitimate hiring interests that MSG purportedly sought to address through this policy.

169.    As a result of MSG's actions, Plaintiffs and the Self-Disclosure Disparate Impact Class have been deprived of their rights and have lost employment opportunities, earnings and other employment benefits.

170.    Plaintiffs and the Self-Disclosure Disparate Impact Class also seek injunctive and declaratory relief to correct MSG's discriminatory policies and practices

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Class Members pray for relief as follows:

(a)    Certification of the case as a class action on behalf of the proposed classes;

(b)    Designation of Plaintiffs Clint Millien and Felipe Kelly as representatives of Class Members;

(c)    Designation of Plaintiffs' counsel of record as Class Counsel;

(d)    An award of all actual and/or statutory damages awardable for violations of the FCRA and NY FCRA including punitive damages for each violation found to be willful;

(e)    An award of compensatory and/or punitive damages for violations of the NYCHRL;

(f)    An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(g)    Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices;

(h)    Pre-judgment and post-judgment interest, as provided by law;

(i)    Payment of a reasonable service award to Plaintiffs, in recognition of the services they have rendered and will continue to render to Class Members, and the risks they have taken and will take; and

(j)     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury in this action.

Dated:  New York, New York
        July 14, 2017

Respectfully submitted,

By:    _/s/ Ossai Miazad_____

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Lewis M. Steel
Christopher M. McNerney
Chauniqua D. Young
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

P. David Lopez (*pro hac vice* motion forthcoming)
601 Massachusetts Avenue NW
2nd Floor West Suite
Washington, DC 20001
Tel: (202) 847-4400
Facsimile: (202) 847-4410

**YOUTH REPRESENT**
Michael C. Pope
Eric Eingold
11 Park Place, Suite 1512
New York, NY 10007
Telephone: (646) 759-8080
Facsimile: (646) 217-3097

*Attorneys for Plaintiffs and the Putative Classes*