# Morgan Lewis

**Paul C. Evans**
+1.215.963.5431
paul.evans@morganlewis.com

June 20, 2018

**VIA E-MAIL**

The Honorable Henry Pitman, U.S.M.J.
United States Courthouse
500 Pearl Street
New York, NY  10007-1312

Re:   *Millien, et al. v. The Madison Square Garden Company et al.*
      Civil Action No. 17-cv-04000

Dear Judge Pitman:

On behalf of The Madison Square Garden Company ("MSG" or "Defendant"), I write in response to Plaintiff Client Millien and Felipe Kelly's (collectively "Plaintiffs") June 14, 2018 letter requesting a conference before Your Honor to discuss the parties' dispute concerning the scope of the third-party subpoenas that MSG intends to serve on companies where Plaintiffs applied to work and/or worked (hereinafter "Pls' Ltr.").

## I.     MSG'S SUBPOENAS SEEK RELEVANT INFORMATION.

As Your Honor is aware, Plaintiffs Millien and Kelly applied for jobs with MSG in the summer of 2015, were given conditional offers of employment, and consented to a background check.  As part of that process, Plaintiffs were asked to disclose prior criminal convictions reportable under New York law and provide the relevant details surrounding each reportable conviction.  Plaintiff Millien disclosed a misdemeanor conviction in Queens, New York that was disposed of in 2009 but failed to disclose a second conviction in Bronx County, New York for which he was sentenced to five months in jail in 2008.  (Am. Ans. ¶ 40).  Similarly, Plaintiff Kelly failed to disclose a 2010 conviction in Bronx County, New York.  (*Id.* at ¶ 60).  As a result of the inaccurate information Plaintiffs provided to MSG when asked to disclose reportable criminal convictions, MSG revoked their conditional offers of employment.

Plaintiffs now bring four separate claims against MSG, each of which relates directly to MSG's revocation of their conditional offers of employment as a result of their failure to fully and accurately disclose their criminal histories during the application process.  (Dkt. 13).  Specifically, Plaintiffs allege that: (1) MSG failed to provide consumer reports and Fair Credit Reporting Act ("FCRA") notices before revoking their conditional offers of employment in violation of Section 1681b(b)(3)(A)(i) and (ii) of the FCRA (Count I); (2) MSG failed to provide a copy of Article 23-A in violation of N.Y. Gen. Bus. Law Section 380g-(d) ("NY FCRA") (Count II); (3) MSG failed to conduct a proper analysis of the Article 23-A factors for all individuals who were denied employment based on criminal offense information found in his or her background check report in violation of the New

**Morgan, Lewis & Bockius LLP**

1701 Market Street
Philadelphia, PA  19103-2921         **T** +1.215.963.5000
United States                        **F** +1.215.963.5001

DB1/ 98027997.1

Honorable Henry Pitman
June 20, 2018

York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL") (Count III); and (4) that MSG's purported policy of denying employment to those individuals who fail to fully disclose conviction histories during the criminal history disclosure process has a disparate impact on Blacks and Latinos who are more likely to have criminal histories, in violation of the NYCHRL (Count IV).

To aid in its defense against these claims, and pursuant to Rule 26 of the Federal Rules of Civil Procedure, MSG intends to serve third-party subpoenas on each of the companies where Plaintiffs applied for work in the last several years (as of 2011 for Kelly; as of 2014 for Millien).[1] Rule 26 permits discovery of "any non-privileged matter that is **relevant** to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, relevance is construed "broadly to encompass any matter that **bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense**." *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (*citing* Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes to 2015 Amendments) (emphasis added); *see also Chan v. NYU Downtown Hosp.,* No. 03–CV–3003, 2004 WL 1886009, at *4 (S.D.N.Y. Aug. 23, 2004) (holding "the imposition of unnecessary discovery limitations is to be avoided" in employment discrimination claims) (internal citation omitted).

In order to justify withholding relevant information, the party resisting discovery must show "good cause."  Fed. R. Civ. P. 26(c).  To meet this burden, the party opposing discovery must show "that disclosure will result in a clearly defined, specific and serious injury.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See Laugier v. City of New York*, 2014 WL 6655281, at *1 (S.D.N.Y. Nov. 24, 2014) (internal citations omitted).

As demonstrated further below, MSG's subpoenas are narrowly tailored to the specific claims and defenses at issue in this litigation: they request documents relating only to Plaintiffs' experiences with the companies' criminal background check processes.  This information is relevant, and therefore, discoverable under Rule 26.  Plaintiffs have not (and cannot) satisfy their burden to show that such discovery is improper.  Moreover, Plaintiffs have produced a combined total of less than 100 documents in this action (some of which are duplicative).  Other than their anticipated deposition testimony, such documents – in addition to those obtained through its third-party subpoenas – is the ***only*** evidence MSG will acquire to develop its defenses in this action.

---

[1] On June 6, 2018, MSG informed Plaintiffs' counsel that it intended to serve subpoenas on the following entities: (1) Pret-A-Manger; (2) Professional Sports Catering; (3) SP Plus Corp.; (4) Core Tech Associates; (5) Icon Parking Systems; and (6) Landmark Group.  It also sought clarifying information relating to four putative employers that Plaintiffs' identified in their Response to MSG's Interrogatory No. 8, but Plaintiffs have not provided such information to date.  MSG also intends to serve identical subpoenas on other employers and prospective employers identified by Plaintiffs.

Honorable Henry Pitman
June 20, 2018

### A. MSG's Subpoenas Are Tailored Towards Obtaining Information Regarding Plaintiffs' Intent In Failing To Fully And Accurately Disclose Their Criminal Histories To MSG, Which Is a Contested Issue.

In Count III, Plaintiffs claim that MSG's purported failure to conduct an Article 23-A analysis with respect to individuals who failed to fully and accurately disclose their criminal history violates the NYCHRL by "failing to give each of the Plaintiffs individualized consideration and the opportunity to . . . . explain that the responses in their applications were not based on falsifying their answers." (Am Compl. at ¶ 6). This claim fails for many reasons, including but not limited to, the fact that Section 751 of the New York Correction Law provides that the Article 23-A factors are inapplicable when, as here, a job applicant commits an "intentional misrepresentation in connection with an application for employment." N.Y.C. Correc. Law at § 751.

In an attempt to circumvent Section 751 of the New York Correction Law, Plaintiffs claim that "the criminal justice system is complex, with technical and varied terminology, which leads many persons with criminal records not to realize the full extent or proper phrasing of their criminal history on job applications." (Am. Compl. at ¶ 93). In that regard, Millien alleges that he was "**confused** by MSG's forms," and that he "only disclosed one of his two misdemeanor convictions, which he reasonably believed was the only information MSG was asking about." (*Id*. at ¶ 41) (emphasis added). Plaintiff Millien further alleges that "although [he] **routinely discloses** both of his convictions when applying for jobs, he only disclosed one when applying for MSG because he was confused by MSG's questions about criminal history, and did not realize he had to disclose both." (¶ 92) (emphasis added). In other words, although notably absent from Plaintiffs' letter, Plaintiffs themselves put at issue their intent at the time they partially disclosed their criminal history to MSG.

To test these allegations, MSG appropriately seeks information relating (1) Plaintiffs' understanding of their own criminal histories in light of the alleged "technical and varied terminology" of the criminal justice system (Request Nos. 1, 4, 5, 7, 8); (2) whether Plaintiffs disclosed their criminal histories to other putative employers, and if so, any communications with those putative employers regarding the same (Request Nos. 1, 7, and 8); and (3) any adjudication of Plaintiffs' consumer reports and/or criminal history disclosures, including an evaluation of whether Plaintiffs fully and accurately disclosed their criminal histories, and any communications with Plaintiffs regarding the same (Request Nos. 2, 3, 4, 5, and 6). All of this information could potentially refute Plaintiffs' allegations that they "routinely disclose" their entire criminal histories but did not do so here because they were "confused" by MSG's request. *See, e.g., Ghonda v. Time Warner Cable, Inc.*, 2017 W: 395111, at *4 (E.D.N.Y. Jan. 27, 2017) ("Plaintiffs should not now be heard to challenge defendants' efforts to obtain discovery of the very allegations referenced in her complaint."); *see also Roth v. Cty. of Nassau*, 2017 WL 75753, at *5 (E.D.N.Y. Jan. 6, 2017) (where plaintiff alleged that his current employment with the NYPD supported his claim that the Nassau County Police Department committed disability discrimination in disqualifying him from employment for medical reasons, court rejected plaintiff's argument that service of subpoena on the NYPD for his employment application would create an undue burden: "a greater burden exists on the Defendant if it does not obtain such documents"). Put another way, unlike in the cases cited by Plaintiffs, MSG's subpoenas seek **only** information relevant to Plaintiffs' claims and MSG's defenses. *C.f., Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (seeking in a race and sexual orientation discrimination case "[a]ll documents and communications, whether paper, electronic or other media, referring or relating to [plaintiff] including but not limited to personnel files, disciplinary files, and any other employment documents or records").

Honorable Henry Pitman
June 20, 2018

That some of MSG's subpoenas are directed to entities to which Plaintiffs applied for work following their applications to MSG does not render them any less relevant.  By way of example, if the documents that MSG requests demonstrate that Plaintiffs failed to fully and accurately disclose their criminal histories to putative employers even **after** MSG revoked their conditional employment offers for that very reason, this fact would undercut Plaintiff Millien's allegation (stated in the present tense) that he "routinely discloses both of his convictions when applying for jobs" and was merely "confused by MSG's forms."  *See supra* at 2.  And it would support MSG's defense that Plaintiffs intentionally misrepresented their criminal histories to MSG.  *Id.*

Moreover, during the May 18, 2018 conference before Your Honor, the parties discussed Plaintiff Kelly's obligation to produce documents in connection with a copy-cat lawsuit that he lodged against a restaurant operated by Levy Premium (hereinafter "Levy's").  *See* Transcript of May 18th Discovery Conference ("Tr.") at 93-97.  Notably, Plaintiff Kelly applied for employment at Levy's in August 2016—approximately **one year after** he applied to work at MSG.  *See generally Kelly v. Brooklyn Events Center*, No. 17 Civ. 4600 (E.D.N.Y.).  Although Plaintiff Kelly agreed to produce all documents "related to the background check requested by the defendants [in the *Kelly v. Brooklyn Events Center* litigation], he refused to produce documents subject to a confidentiality order.  (Dkt. 56 at 5).  To resolve this issue, this Court stated "[w]ith respect to the Levy's documents, I would direct [] either you call [the attorney representing Levy's in the action] or **serve a subpoena on Levy's and get them directly from the source**."  (Tr. at 94:6-9) (emphasis added).  Plaintiffs' counsel never objected to Your Honor's order or otherwise argued that MSG was not entitled to obtain documents "related to the background check" that Levy's procured on Plaintiff Kelly – the very same type of documents that MSG seeks via subpoena here – merely because he applied to Levy's after he applied to MSG.  *See generally id*.  Plaintiffs' complaint now that such information is irrelevant is without merit.

It also bears noting that during the meet and confer between Plaintiffs' counsel and MSG's counsel last week, Plaintiffs' counsel suggested that MSG narrow the scope of its subpoena to include only requests for Plaintiffs' job applications at the targeted entities.  But Plaintiffs' counsel well knows that MSG cannot obtain the relevant information it seeks regarding Plaintiffs' criminal histories from their job applications alone.  Plaintiffs themselves argued this precise point.  In their May 17th Letter to this Court, Plaintiffs argued that "requiring Plaintiffs to produce all documents relating to applications for employment . . . . . lacks reasonableness.  To the extent that Defendants argue that such documents may reveal disclosure of criminal history, that is rarely the case.  In fact, as of November 5, 2015, New York City has 'banned the box' and specifically prohibited employers from asking about criminal history on job applications." (Dkt. 56 at 3).  Thus, Plaintiffs clearly recognize that MSG must request documents beyond a mere job application to acquire relevant information regarding Plaintiffs' criminal history disclosures.

In sum, the information that MSG seeks via its subpoena is directly relevant to the claims and defenses in this case; therefore, it is discoverable under Rule 26.

## II.     PLAINTIFFS WILL NOT BE HARMED BY MSG'S SUBPOENAS.

Plaintiffs attempt to avoid the issuance of MSG's subpoenas by generically claiming that such will cause them "intimidation," "embarrassment," and "interference with employment relationships and prospects." (Pls' Ltr. at 2-3).  Not so.  *First*, as an initial matter, Plaintiffs chose to bring this lawsuit challenging MSG's background check processes; therefore, they should have reasonably expected that their experiences with other putative employers' background check processes would be disclosed.  *See, e.g.*, *Mirkin v. Winston Resources, LLC*, 2008 WL 4861840, at *6 (S.D.N.Y. Nov.

Honorable Henry Pitman
June 20, 2018

10, 2008); (rejecting the plaintiff's claim that a subpoena on her subsequent employer would cause undue embarrassment because "[p]laintiff could have reasonably expected that matters relating to her employment performance would be disclosed in this [employment discrimination] litigation"); *During v. City of Univ. of N.Y.*, 2006 WL 2192843, at *16 (S.D.N.Y. Aug. 1, 2006) ("A litigant himself must reasonably anticipate that his personal matters will be disclosed, while a non-party having no stake in the litigation retains a greater expectation of privacy.").

*Second*, Plaintiffs' assertion that their alleged concerns are "particularly acute here because the subpoenas are requesting criminal history information," is meritless. (Pls' Ltr. at 2). For one thing, as Plaintiffs admit, the fact that they filed a lawsuit is public knowledge—it is "searchable and 'may become known to prospective employers when evaluating the person.'" *Id.* (citations omitted). And in this publicly filed lawsuit, Plaintiffs readily concede that they each have criminal histories. (Am. Compl. ¶ 29) ("Plaintiffs each have criminal convictions."). For another thing, as Plaintiffs well know, the law protects job applicants and current employees from suffering adverse employment consequences based on the existence of their criminal histories alone. N.Y.C. Admin. Code § 801-10 ("It shall be an unlawful discriminatory practice [] [f]or any employer, employment agency or agent thereof to deny employment to any person or take adverse action against any employee by reason of such person or employee having been convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" which is based on such person or employee having been convicted of one or more criminal offenses . . . . .").

*Third*, Plaintiffs' contention that the mere service of the challenged subpoenas would cause harm to their job prospects is conclusory and speculative at best. For example, Plaintiff Millien admits that he recently left Pret-A-Manger "to start his own business," but then states in wholly speculative fashion that "he may look to re-join the company in the foreseeable future." (Pls' Ltr. at 4). Plaintiff Millien also expresses concern about his "pending job application" with Securitas, while again, stating that he is currently operating his own business and thus is presumably no longer pursing employment at this company. *Id.* In sum, Plaintiffs have not alleged any specific facts to support their conclusory assumption that service of the subpoena would harm their job prospects. *See supra* at 4-5; *see also, e.g.*, *Ghonda*, 2017 WL 395111, at *3 (denying motion to quash subpoena and rejecting the plaintiff's broad allegations of harm on potential job prospects); *see also Mirkin*, 2008 WL 4861840, at *1 (denying motion to quash subpoena for testimony of plaintiff's supervisor at subsequent employer, for whom she no longer worked, and, in the absence of any claim that the former supervisor was assisting in the plaintiff's job search, distinguishing cases finding undue burden on plaintiff's job prospects).

### III. MSG'S SUBPOENAS DO NOT SEEK CUMULATIVE INFORMATION.

MSG's subpoenas seek information that may not be in the possession of Plaintiffs. As a starting point, Plaintiffs have produced less than 100 documents in this litigation, and none of those documents reflects their experience with criminal history disclosures at prospective or actual employers other than MSG. This is not surprising. As noted above, companies are precluded under New York law from seeking information relating to applicants' criminal histories until after a conditional offer employment. *See supra* at 4. Thus, even if Plaintiffs retained a copy of their job applications, they are unlikely to possess their criminal history disclosures that occurred later in the application process. Nor are Plaintiffs likely to possess documents reflecting the targeted companies' analysis of their criminal history and/or consumer reports or communications with third-parties regarding the same. Moreover, Plaintiffs may not have ever received and/or retained the remainder of information sought in MSG's subpoena. MSG's subpoenas thus do not request cumulative or duplicative information.

Honorable Henry Pitman
June 20, 2018

We look forward to an informal conference before Your Honor to resolve this issue.  Please do not hesitate with any questions.

Sincerely,

/s/ Paul C. Evans

Paul C. Evans

PCE