**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
Cheryl-Lyn Bentley
Nina T. Martinez
685 Third Avenue, 25th Floor
New York, New York 10017

**YOUTH REPRESENT**
Michael C. Pope
Eric Eingold
11 Park Place, Suite 1512
New York, New York 10007

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **CLINT MILLIEN and FELIPE KELLY,** **individually and on behalf of all others similarly** **situated,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **THE MADISON SQUARE GARDEN** **COMPANY and MSGN HOLDINGS, L.P.,** <br><br> **Defendants.** | **No. 17 Civ. 4000 (AJN)(HBP)** |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASSES, APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

    I.      Pre-Suit Outreach.................................................................................... 2

    II.     Overview of Litigation.......................................................................... 2

    III.    Settlement Negotiations ........................................................................ 5

SUMMARY OF THE SETTLEMENT TERMS......................................................... 6

    I.      Programmatic Relief ............................................................................. 6

    II.     Monetary Relief .................................................................................... 7

    III.    Class Members...................................................................................... 8

    IV.    Individual Class Member Payments ..................................................... 8

    V.     Class Member Releases ........................................................................ 8

    VI.    Attorneys' Fees, Costs, and Service Awards ........................................ 9

    VII.   Unclaimed Funds .................................................................................. 9

    VIII.  Settlement Administrator ...................................................................... 10

CLASS ACTION SETTLEMENT PROCEDURE ...................................................... 10

ARGUMENT ............................................................................................................... 10

    I.      Preliminary Approval of the Class Action Settlement Is Appropriate ................ 10

          A.    Litigation Would Be Complex, Costly, and Long (Factor 1). ................. 12

          B.    The Court Cannot Assess the Reaction of the Class Until After Notice Issues (Factor 2)..................................................................... 13

          C.    The Parties Have Completed Sufficient Discovery to Evaluate the Claims and Defenses (Factor 3). ...................................................... 13

          D.    The Risk of Establishing Liability and Damages for the Class Through Trial Favors Approval (Factors 4 and 5)................................... 15

          E.    The Risk of Obtaining Class Certification Favors Approval (Factor 6)... 15

F.  Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (Factor 7)..............................................................16

G.  The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9)..........................17

II.  Conditional Certification of the Class Is Appropriate ...........................................19

A.  Numerosity Is Satisfied..........................................................................19

B.  Commonality Is Satisfied........................................................................19

C.  Typicality Is Satisfied. ..........................................................................20

D.  Adequacy of the Named Plaintiffs Is Satisfied. .......................................21

E.  Certification Is Proper Under Rule 23(b)(3). ...........................................22

1.  Common Questions Predominate. .................................................22

2.  A Class Action Is a Superior Mechanism. ....................................23

III.  Plaintiffs' Counsel Should Be Appointed as Class Counsel................................23

IV.  The Notices and Award Distribution Process Are Appropriate............................25

CONCLUSION..................................................................................................................25

**<u>TABLE OF AUTHORITIES</u>**

**Cases** **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................... 22, 23

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................................... 12, 14, 16

*Capsolas v. Pasta Res., Inc.*,
   No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)........................................ 21, 23

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................................ 14

*Chen-Oster v. Goldman, Sachs & Co.*,
   325 F.R.D. 55 (S.D.N.Y. 2018) ......................................................................................... 22, 23

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................................................... 12

*Clark v. Ecolab, Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)................................................................... 11

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).................................................................................................. 19

*Delmoral v. Credit Prot. Ass'n, LP*,
   No. 13 Civ. 242, 2015 WL 5793311 (E.D.N.Y. Sept. 30, 2015).......................................... 16

*Domonoske v. Bank of Am., N.A.*,
   790 F. Supp. 2d 466 (W.D. Va. 2011) .................................................................................. 17

*In re Drexel Burnham Lambert Grp.*,
   960 F.2d 285 (2d Cir. 1992)................................................................................................. 20

*Duling v. Gristede's Operating Corp.*,
   267 F.R.D. 86 (S.D.N.Y. 2010) .......................................................................................... 21

*Dziennik v. Sealift, Inc.*,
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ........................................... 21

*Easterling v. Conn. Dep't of Corr.*,
   No. 08 Civ. 826, 2011 WL 5864829 (D. Conn. Nov. 22, 2011)............................................. 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................... 11

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................... 20

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)......................................................................................... 20

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)............................................................................ 23

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y. 2014)................................................................ 24

*Int'l Brotherhood of Teamsters v. United States*,
    431 U.S. 324 (1977)......................................................................................... 15

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969) .................................................................. 15

*Karic v. Major Auto. Cos., Inc.*,
    No. 09 Civ. 5708, 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016)..................... 14

*Keels v. Geo Grp., Inc.*,
    No. 15 Civ. 6261, 2017 WL 4477000 (E.D.N.Y. Oct. 1 2017) ....................... 24

*Kelly v. Brooklyn Events Ctr., LLC et al*
    No. 17 Civ. 4600 (E.D.N.Y), Oct. 2, 2018 ............................................... 20, 24

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
    No. 14 Civ. 238, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ...................... 17

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)............................................................................ 20

*Martens v. Smith Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................... 14, 21

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995)............................................................................ 11

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................................... 22

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012).............................................................. 14

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998)............................................................................ 10

*Pickett v. SIMOS Insourcing Sols., Corp.*,
   No. 17 Civ. 1013, 2017 WL 3444755 (N.D. Ill. Aug. 10, 2017)..............................................24

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451, 2010 WL 5508296 (S.D.N.Y. Dec. 22, 2010)...........................................25

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)...................................................................................................20

*Syed v. M-I LLC*,
   No. 14 Civ. 742, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016)................................................17

*Times v. Target Corp.*,
   No. 18 Civ. 2993, 2018 WL 3238821 (S.D.N.Y. May 14, 2018)..........................20, 21, 23, 24

*Torres v. Gristede's Operating Corp.*,
   Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627,
   2010 WL 2572937 (S.D.N.Y. June 1, 2010) ..........................................................................11

*Toure v. Cent. Parking Sys. of N.Y.*,
   No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)..........................................21

*In re Traffic Exec. Ass'n E. R.R.*,
   627 F.2d 631 (2d Cir. 1980)...................................................................................................11

*Tyson Foods Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)...........................................................................................................22

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)...................................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................................10, 11

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)...................................................................................................14

*Watkins v. Hireright, Inc.*,
   No. 13 Civ. 1432, 2016 WL 1732652 (S.D. Cal. May 2, 2016).........................................17, 19

*White v. First Am. Registry, Inc.*,
   No. 04 Civ. 1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ..............................................17

*White v. First Am. Registry, Inc.*,
   378 F. Supp. 2d 419 (S.D.N.Y. 2005).....................................................................................19

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................................11

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ passim

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632, § 21.634 (2004) ......................................... 11

Manual for Complex Litigation (Third) § 30.42 (1995) ............................................................. 11

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"),
 § 13:10 (5th ed. 2017) ......................................................................................................... 10, 11

**INTRODUCTION**

Plaintiffs Clint Millien and Felipe Kelly, on behalf of those similarly situated, respectfully submit for the Court's preliminary approval, a proposed settlement with The Madison Square Garden Company and MSGN Holdings, L.P. (collectively, "Defendants" or "MSG") (collectively, the "Parties"). This class action settlement resolves Plaintiffs' challenge to the administration of MSG's criminal history background check screen in making hiring decisions. It is the product of extensive arm's-length negotiation between the Parties.

This settlement provides significant benefits to Class Members while ensuring a fair background check process for the many future applicants in New York City who may seek employment with MSG. The settlement provides for substantive programmatic changes to MSG's background check processes and cash payments to all Class Members. It is a real step forward in addressing the screening out of applicants based on the criminal history they failed to affirmatively disclose to an employer.[1] In total, MSG is obligated to pay up to approximately $1,284,800.00 as a result of this settlement.

As set forth below, the Settlement Agreement is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval under federal law. Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement ("Settlement Agreement"), attached as Exhibit A to the Declaration of Ossai Miazad ("Miazad Decl.")[2]; (2) conditionally certify the proposed settlement classes, for settlement purposes only, under Federal Rule of Civil Procedure 23; (3) appoint Outten & Golden LLP ("O&G") and Youth Represent ("YR") (together, "Plaintiffs' Counsel") as Class Counsel; and (4) approve the proposed Court-

---

[1]     MSG denies that its background check processes violated the law.

[2]     Unless otherwise indicated, all Exhibits are attached to the Miazad Declaration and all capitalized terms have the definitions set forth in the Settlement Agreement.

Authorized Notices and Claim Form ("Notices and Claim Form"), attached as Exhibits 1-3 to

Exhibit A (Settlement Agreement), and authorize their distribution.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Pre-Suit Outreach

Plaintiffs' Counsel, who are well-aware of the complexity of cases like this one and the

value of early collaborative settlement discussions, sent MSG a letter on June 20, 2016, advising

it of Plaintiffs' claims.  Miazad Decl. ¶ 9.  In preparing this correspondence, Plaintiffs' Counsel

engaged in a substantial investigation that included review of Plaintiff Millien's facts and

documents in his possession, legal research, interviews of potentially impacted applicants, and an

inquiry into MSG and its business practices.  *Id.* ¶ 10.  On October 25, 2016, the Parties held an

in-person meeting attended by Plaintiffs' Counsel, MSG's outside counsel, MSG's Deputy

General Counsel, and Vice President of Employment Law.  *Id.* ¶ 11.  The Parties were unable to

arrive at a pre-suit resolution, and Plaintiff Millien filed suit.  *Id.*

### II.     Overview of Litigation

Plaintiff Millien (later joined by Plaintiff Kelly) filed his Class Action Complaint on

April 26, 2017, in the Supreme Court of New York and MSG removed the matter to the Southern

District of New York on May 26, 2017.  ECF No. 1.  Plaintiffs alleged, among other things, that

MSG violated the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-

101 *et seq*., under a disparate impact theory challenging MSG's disclosure policy as having a

disparate impact on African American and Latino applicants and under a disparate treatment

theory challenging MSG's criminal history adjudication policies and practices as having a

discriminatory impact on individuals with criminal records.  *See* ECF No. 1 at ¶¶ 63-68.

Plaintiffs also alleged that MSG violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §

1681 *et seq*., and the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus.

Law § 380 *et seq*., by failing to provide Plaintiffs, and other job applicants, with a copy of their background check reports ("consumer reports"), a statement of their rights under the FCRA, a Fair Chance Act Notice and a copy of Article 23-A of the New York Correction Law—before denying them employment. *See id.* at ¶¶ 69-91. MSG filed an answer to the complaint on June 26, 2017. *See* ECF No. 12. Plaintiffs filed their First Amended Complaint ("FAC") on July 14, 2017 to add Plaintiff Kelly, *see* ECF No. 13, to which MSG filed an answer on November 1, 2017. ECF No. 40. As set forth in MSG's Answer, MSG's position is that, among other things, it complies with all legal requirements when it conducts background checks on prospective employees; it was not required to perform an Article 23-A assessment under the NYCHRL because Plaintiffs intentionally misrepresented their criminal histories during MSG's screening process; Plaintiffs cannot establish a willful violation of the FCRA and NY FCRA (and therefore Plaintiffs could not recover statutory and/or punitive damages); Plaintiffs cannot meet their burden to show that MSG's self-disclosure policy had a disparate impact on minorities; and Plaintiffs are not similarly situated to the individuals they seek to represent and therefore class action treatment is not appropriate.

From October 2017 to August 2018, the Parties vigorously litigated this case. Miazad Decl. ¶ 12. During this time, the Parties engaged in substantial written discovery. At the threshold, they negotiated a robust electronic discovery stipulation, which they filed with the Court on October 3, 2017, ECF No. 33, and a confidentiality stipulation, which was filed with the Court on December 21, 2017. ECF No. 41. After these agreements were in place, the Parties engaged in full written discovery of Plaintiffs, production by MSG of over 10,000 pages of documents, and the deposition of the Director of Policy and Compliance. Miazad Decl. ¶ 13. The Parties also expended significant time in preparation for the depositions of Plaintiffs, and the deposition of MSG's former Director of Policy and Compliance and a Federal Rule of Civil

Procedure 30(b)(6) witness—which all would have occurred in short order in preparation for class certification briefing. *Id.* ¶ 14.  The Parties agreed to engage in settlement discussions, and requested a stay of the litigation, approximately four weeks before the scheduled close of discovery.  ECF No. 72; *see also* Miazad Decl. ¶ 15.

Throughout the period before the stay was requested, the Parties exchanged multiple correspondence and engaged in dozens of meet and confers over discovery.  While the parties were largely successful in resolving (or narrowing) their disputes, Plaintiffs invoked the Court's assistance twice to resolve specific disputes.  *See* ECF Nos. 49, 51, 53-54, 57, 61-63, 68.

On May 9, 2018, Plaintiffs raised several disputes relating to the scope of MSG's production with Judge Pitman, which MSG opposed on May 14, 2018.  ECF Nos. 51, 53.  The Parties then attended a lengthy discovery conference with Judge Pitman where they comprehensively argued their disputes before the Court.  *See* ECF No. 57.

On June 14, 2018 Plaintiffs raised a second dispute with the Court requesting a pre-motion conference regarding MSG's anticipated third-party subpoenas to potential, past, and current employers of Plaintiffs.  ECF No. 61.  On June 20, 2018, MSG filed a response to that letter, ECF No. 62, and Plaintiffs submitted a reply the following day.  ECF No. 64.  On July 5, 2018, the Court held a hearing on MSG's third-party subpoenas, and heard arguments as to the Parties' respective positions.  *See* ECF No. 70.  While Judge Pitman ultimately ordered that nearly all of the subpoenas could be served, the Court significantly limited the scope of the information MSG could seek.  *See id.*

Plaintiffs also served third-party subpoenas on two vendors MSG used to run background checks on applicants during the class period, and extensively negotiated the production of class member information from those vendors.  Miazad Decl. ¶ 16.  These discussions were complicated and time consuming, involving lengthy discussions over the information the vendors

possessed, their capacity (and willingness) to produce it, and how and in what form it could be produced, which ultimately involved the vendors building out specific programs to collect the disparate information in their systems. *Id.* ¶ 17. As a result of these efforts, the vendors produced over 74,000 Excel entries and 99 fields of information, including every applicant to MSG who had a background check run on them, the criminal history information they self-disclosed, the criminal history information the vendors uncovered, the vendors' review of the two, and MSG's notes as to the applicants—among other information crucial to determining the scope of the class and the individuals potentially impacted by the policies and practices challenged in this suit. *Id.* ¶ 18.

After completing nearly all the discovery needed to move for class certification, on August 14, 2018, the Parties jointly requested that the Court stay the action to explore settlement. ECF No. 72.

## III.   <u>Settlement Negotiations</u>

Since Plaintiffs' initial attempt to resolve the case pre-suit, the Parties participated in numerous telephone and email conversations about the possibility of settlement discussions. Miazad Decl. ¶ 19. To this end, the Parties attended a comprehensive day-long settlement meeting on September 13, 2018. *Id.* Following the September 13, 2018 in-person settlement conference, the Parties had numerous additional settlement discussions and exchanged a series of written counter-proposals as to a framework for settlement. *Id.* ¶ 20.

After laying this groundwork, the Parties agreed to attend mediation before Dina R. Jansenson, a well-respected employment and class action mediator. *Id.* ¶ 21. In advance of mediation, the Parties exchanged detailed mediation statements outlining their respective evaluations of the strengths and weaknesses of the claims at issue. *Id.* ¶ 22. Plaintiffs also conducted a preliminary damages analysis for purposes of settlement negotiations. *Id.*

On December 5, 2018, the Parties participated in a day-long mediation with Ms. Jansenson. *Id.* ¶ 23. Although the Parties made significant progress, after concluding a full day of arm's-length negotiations, they were unable to reach a resolution but agreed to continue negotiating with the assistance of Ms. Jansenson. *Id.*

The Parties convened for a second day of mediation with Ms. Jansenson on February 28, 2019. *Id.* ¶ 24. After almost 15-hours of intensive arm's-length negotiations (ultimately concluding after 3:00 a.m. the following morning), the Parties reached an agreement in principle as to the structure of the settlement. *Id.* Over the next approximately three months, the Parties negotiated a detailed Term Sheet. *Id.* ¶ 25; *see* ECF Nos. 80-85. Following agreement on many substantive issues presented by the Term Sheet, the Parties concurrently began negotiating the Settlement Agreement and supporting documents (including the Notices and Claim Form). Miazad Decl. ¶ 26; Ex. A (Settlement Agreement). On or about June 17, 2019, the Parties executed the Settlement Agreement. Miazad Decl. ¶ 26

## SUMMARY OF THE SETTLEMENT TERMS

### I.   Programmatic Relief

This settlement provides that MSG will implement substantive changes to its policies and practices. Specifically, MSG's affirmative obligations are to:

1)   Formalize its background check procedures in writing;

2)   Provide pre-adverse action letter and/or adverse action letters to denied applicants based on the content of their background check reports in accordance with federal, state, and local law, and revise its pre-adverse action letters (MSG states it already provides legally compliant documents);

3)   Provide NYC Fair Chance notices to applicants in accordance with the New York City Fair Chance Act (MSG states it already provides legally compliant documents);

4)   Revise its Criminal History Disclosure to state that applicants need not disclose criminal convictions for possession of marijuana, except for convictions for possession with intent to sell the same;

5)     Train employees who are responsible for reviewing the substance of applicants' background check reports, including training recruiters on MSG's self-disclosure policy and provide a one-time opportunity for Youth Represent to present to MSG employees regarding issues that may lead applicants to fail to disclose criminal convictions;

6)     Advise each applicant by email, prior to his or her submission of consent for MSG to obtain a background check report, about the opportunity to provide evidence of rehabilitation, explain the procedure by which an applicant may provide evidence of rehabilitation, and remind the applicant that the failure to fully and accurately disclose may result in denial of employment;

7)     Revise its messaging documents to state that applicants can provide evidence of rehabilitation to MSG, provide an email address for applicants to do so, and state in the application portal in bold type that an applicant's failure to fully and accurately disclose may result in denial of employment;

8)     Revise its policy to limit applicants' self-disclosure requirements to the five years preceding their application for employment;

9)     Ensure that conditional offers of employment will not be revoked because of applicants' failure to disclose open warrans;

10)     Provide applicants with an opportunity to explain when they fail to fully or accurately disclose their criminal conviction history, and access at that time to both the applicants background check and self-disclosures, *see* Exhibit 5 (Criminal History Disclosure) to Ex. A (Settlement Agreement);

11)     Revise its lifetime ban on reapplying to allow applicants denied employment based on their failure to fully and accurately disclose their criminal conviction histories to reapply for employment after two years; and

12)     Designate an employee to monitor implementation of the Settlement Agreement.

*See* Ex. A (Settlement Agreement) §§ IV(A)-(L).

## II.    **Monetary Relief**

Additionally, MSG has agreed to pay up to approximately $519,800.00 to Class Members,[3] $15,000.00 in service awards, and up to $750,000.00 in attorneys' fees and costs, for a total Settlement Payment of $1,284,800.00, in addition to the costs of settlement administration.  *See id.* §§ III(A), III(B), III(E), III(G), VIII(A).

---

[3]     This number is an approximation of MSG's maximum exposure for Class Member claims, depending on the final number of Class Members.

**III.**    **Class Members**

The Settlement Agreement sets forth two classes:

[The] "FCRA Class" means individuals who were denied employment with MSG based on the content of his or her Background Check Report from April 26, 2015 through the date of Preliminary Approval of the Settlement.

[The] "NYC Class" includes individuals who applied for employment with MSG in New York City, New York and who were denied employment based on MSG's determination that they failed to fully or accurately disclose their criminal conviction history from May 8, 2014 through the date of Preliminary Approval of the Settlement.

Ex. A (Settlement Agreement) §§ II(S), II(AA).  The NYC Class is a subset of the FCRA Class (*i.e.* each NYC Class Member is also a FCRA Class Member, but not every FCRA Class Member qualifies as a NYC Class Member).

**IV.**    **Individual Class Member Payments**

MSG has agreed to compensate class members on a per-person basis depending on the claims to which they are eligible.  For FCRA Class Members, MSG has agreed to pay $200.00 per person, which will be provided without any requirement for them to submit a claim form.  *Id*. § III(A).  MSG will pay an additional $1,700.00 to each NYC Class Member who (1) submits a timely Claim Form; (2) completes a W-9 Form; and (3) MSG determines would have been eligible for employment based on their criminal record at the time of their original application had they fully and accurately disclosed their criminal history.  *Id*. §§ III(B), III(E).  Based on the Parties' understanding that there are approximately 389 FCRA Class Members and 260 NYC Class Members, this means MSG is obligated to pay up to approximately $519,800.00.  Miazad Decl. ¶ 27.

**V.**    **Class Member Releases**

All FCRA Class Members who do not exclude themselves from the settlement will

Release "all claims . . . under the FCRA and/or NY FCRA, including but not limited to claims for statutory damages, compensatory damages, punitive damages, penalties, attorneys' fees and costs, and all other available relief." Ex. A (Settlement Agreement) § V(A).

In addition to FCRA and NY FCRA claims, all NYC Class Members who do not exclude themselves from the settlement will release:

> [A]ll claims . . . relating to their criminal records, including discrimination claims that he or she had, have, or may have, including under Title VII of the Civil Rights Act of 1964, 42 U.SC. § 2000e *et seq*., the NY FCRA, the Correction Law, and the NYCHRL, against MSG, including but not limited to claims for statutory damages, compensatory damages, punitive damages, penalties, attorneys' fees and costs, and all other relief available.

*Id.* § V(C).

## VI.    Attorneys' Fees, Costs, and Service Awards

Plaintiffs will seek Court approval of an award of no more than $750,000.00 for attorneys' fees including actual litigation expenses and costs and service awards of no more than $7,500.00 for each Named Plaintiff.  *Id.* §§ II(JJ), III(F), III(G).  These amounts were negotiated by the Parties separately from the remainder of the Settlement, and will be paid by MSG in addition to the agreed-to Class Member recoveries.  *See id.* § III.  The Court need not decide attorneys' fees and costs or services awards now; Plaintiffs will move for Court approval with the Motion for Final Approval.

## VII.    Unclaimed Funds

The Settlement Agreement provides that funds from any checks uncashed after the 120-day check cashing period, or 60 days after the date of issuance, whichever is longer, will be directed to Getting Out and Staying Out ("GOSO"), a New York City non-profit organization that assists individuals with criminal histories to re-enter the workforce.  Ex. A (Settlement Agreement) § III(I).  There is no reversion to MSG from uncashed checks.

## VIII.   Settlement Administrator

JND Legal Administration has been selected to administer the settlement.  *Id.* § VIII(A).

MSG has agreed to pay the costs of administering the settlement, including the cost of

distribution of notice, tax reporting, and other duties assigned by the Parties to the settlement

administrator.  *Id*.  These costs will be paid by MSG in addition to the amounts agreed to above.

## CLASS ACTION SETTLEMENT PROCEDURE

Rule 23's class action settlement procedure includes three distinct steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.   Dissemination of notice of settlement to all affected class members by first class mail and electronic mail; and

3.   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which arguments concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Fed. R. Civ. P. 23(e) & advisory committee's note to 2018 amendment; *see also* 4 Herbert B.

Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), § 13:10 (5th ed. 2017).  This

process safeguards class members' procedural due process rights and enables the Court to fulfill

its role as the guardian of the class' interests.  With this motion, Plaintiffs request that the Court

take the first step: grant preliminary approval of the Settlement Agreement, conditionally certify

the settlement classes, approve the Parties' proposed Notices and Claim Form, and order their

distribution.

## ARGUMENT

## I.   Preliminary Approval of the Class Action Settlement Is Appropriate

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor

of settlements, particularly in the class action context" (quoting *In re PaineWebber Ltd. P'ships*

*Litig.*, 147 F.3d 132, 138 (2d Cir. 1998))).  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  In exercising discretion, "courts should give 'proper deference to the private consensual decision of the parties.'"  *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (quoting *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)).

Review of a class settlement proceeds in steps.  First, "counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Manual for Complex Litigation (Fourth) § 21.632 (2004).  The Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).  Then, after notice is given to the class, the court holds a fairness hearing.  *See* Manual for Complex Litigation (Fourth) § 21.634.

Preliminary approval requires an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties. *Newberg* § 13:10.  Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement.  *Wal-Mart Stores*, 396 F.3d at 116.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Id.* at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)) (internal quotation marks omitted).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *2 (E.D.N.Y. Feb. 18, 2011) (quoting *In re EVCI Career*

*Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)) (alterations in original).

The first step in the settlement process simply allows notice to be issued to the class and for class members to object to or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.  In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Although the Court need not evaluate the *Grinnell* factors to conduct its initial evaluation of the settlement, for purposes of evaluating the settlement's fairness, it is useful for the Court to consider these criteria.

Here, the relevant *Grinnell* factors weigh in favor of preliminary approval.

A.      **Litigation Would Be Complex, Costly, and Long (Factor 1).**

By reaching a favorable settlement early, before certification and dispositive motions, trial, or appeals, Plaintiffs avoid significant expense and delay and ensure timely individual and programmatic relief for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case involves approximately 389 FCRA Class Members and a subset of 260 NYC Class Members, providing a complicated interplay of multiple laws governing how an employer evaluates the criminal history of job applicants.  Miazad Decl. ¶ 27.  This case also is (to Plaintiffs' Counsel's knowledge) the first class action challenging an employer self-disclosure policy under New York City Human Rights Law, and thus required additional care to research, draft the complaint, and craft a litigation and

settlement strategy, and poses additional risk to litigate.  *Id.*  MSG's position is that its self-disclosure policy was at all times fully compliant with federal, state, and city law.

Should the case go forward, Plaintiffs would likely face extensive discovery disputes relating to the remaining discovery issues, strong opposition to class certification, *Daubert* challenges to Plaintiffs' experts, and a motion for summary judgment.  *Id.* ¶ 28.[4]  If Plaintiffs were able to overcome these hurdles, a trial on the merits would involve significant risk as to both liability and damages.  *Id.*  While Plaintiffs believe they could ultimately defeat MSG's defenses and establish liability, this would require significant factual development and favorable outcomes at trial, and on appeal, all of which are inherently uncertain and lengthy.  *Id.* ¶ 29.  The proposed settlement eliminates this uncertainty and guarantees class members prompt relief. This factor therefore weighs in favor of preliminary approval.

### B.  The Court Cannot Assess the Reaction of the Class Until After Notice Issues (Factor 2).

After notice is issued and class members have had an opportunity to be heard, the Court can fully analyze the second *Grinnell* factor.  The settlement provides programmatic relief that addresses the causes of class members' harm—including significant and systemic changes to MSG's self-disclosure policy.  *Id.* ¶ 30.  For these reasons, Plaintiffs' Counsel are confident that the classes will respond favorably to the settlement.

### C.  The Parties Have Completed Sufficient Discovery to Evaluate the Claims and Defenses (Factor 3).

The Parties have completed sufficient discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before

---

[4]    For example, Plaintiffs' Counsel's background check discrimination case against the U.S. Census Department, which spanned over six years and at least 28 conferences involving the Court, also involved three separate motions to dismiss in addition to the defendants' opposition to class certification and *Daubert* challenges to their expert witnesses.  Miazad Decl. ¶ 28.

negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)); *see also Karic v. Major Auto. Cos., Inc.*, No. 09 Civ. 5708, 2016 WL 1745037, at *6 (E.D.N.Y. Apr. 27, 2016) (same). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (alterations in original).

Here, the extent of the discovery is robust, and the Parties' efforts meet this standard. As described *supra* pp. 2-5, before the Parties agreed to discuss settlement, the case was litigated extensively, with numerous motions and discovery conferences, a deposition and the preparation of several other depositions, over 10,000 pages of documents produced, several discovery disputes, and lengthy negotiations to produce comprehensive class members criminal history information from third-party vendors (which has been thoroughly reviewed by the Parties). Miazad Decl. ¶¶ 12-18. The Parties also attended three full days of settlement discussions, and engaged in multiple telephone conferences before and after mediation to reach agreement. *Id.* ¶¶ 19-26.

The Parties had the critical information they needed to value the case and make an informed decision on settlement. The remaining litigation—including written and oral discovery on liability and damages, a class certification motion, expert depositions, and trial—would be protracted, and an appeal would be likely.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case. Thus, this factor supports preliminary approval. *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases) (granting preliminary approval even where no formal discovery had occurred because the parties

nonetheless had "ample information from which to weigh the strengths and weaknesses of their claims").

**D.      The Risk of Establishing Liability and Damages for the Class Through Trial Favors Approval (Factors 4 and 5).**

Although Plaintiffs believe their claims are meritorious, they also recognize the significant legal and procedural obstacles they would face in establishing liability and recovering damages.  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

Class actions under the NYCHRL, FCRA, and NY FCRA are subject to considerable risk.  Miazad Decl. ¶ 27.  This is especially true here, where Plaintiffs' legal theory is novel and untested. *Id.*  Further, as explained above, MSG strongly contests the legal and factual basis for Plaintiffs' claims.  Additionally, establishing damages for an applicant class is not without challenges.  MSG likely would argue that questions concerning individual employment decisions and entitlement to damages would overwhelm the litigation.  If the Court agreed, even if Plaintiffs prevailed on the merits, eligibility for back pay for over 200 class members would likely have to be determined through some form of individualized hearings. *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361, 371-76 (1977).

In contrast to these known risks, the settlement ensures that MSG will make changes to its background check policy, including its handling of applicant self-disclosure and provide compensation to qualified class members.  These circumstances favor preliminary approval.

**E.      The Risk of Obtaining Class Certification Favors Approval (Factor 6).**

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the class, and such a determination would likely be reached only after extensive briefing.  MSG would argue that individual questions preclude class certification,

including whether the relevant policies and procedures were consistently applied.  Although
background check cases are certified, there is nonetheless a legitimate risk that the Court would
conclude that individualized factual inquiries would preclude class treatment or that a damages
class could not be certified.  *See, e.g.*, *Delmoral v. Credit Prot. Ass'n, LP*, No. 13 Civ. 242, 2015
WL 5793311, at *6 (E.D.N.Y. Sept. 30, 2015) (denying class certification in FDCPA case where
"each proposed class member's claim would require an individualized determination of exactly
when he or she received the" relevant communications).  Should the Court certify the class,
MSG would likely later challenge certification and move to decertify, requiring another round of
briefing.  MSG might also seek permission to file an interlocutory appeal under Rule 23(f).
Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and
delay.  This factor also favors preliminary approval.

### F.    Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (Factor 7).

A "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest
that the settlement is unfair."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at
178 n.9.  Here, the settlement eliminates the risk of collection by requiring MSG to pay the total
amount owed to Settlement Class Members within 30 days of the Effective Date for FCRA Class
Members.  *See* Ex. A (Settlement Agreement) § III(H).  For Participating NYC Class Members,
the settlement requires MSG to pay the total amount owed within 90 days of the date the
Settlement Administrator sends Participating NYC Class Members a W-9 Form or within 14
days of the date every member of the NYC Class who has submitted a timely Claim Form has
also submitted a W-9 Form, whichever is earlier.  *Id.*  Accordingly, this factor is not
determinative and has no bearing on the fairness of the settlement.

### G.    The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9).

The relief provided in the settlement is comprehensive.  In particular, it provides changes to MSG's hiring policies for all future applicants to MSG, compensation for FCRA and NY FCRA violations, and an opportunity for NYC Class Members to obtain additional compensation.

Through this settlement, all Class Members are entitled $200.00 as compensation for their FCRA and NY FCRA claims.  This is an excellent class recovery to account for statutory damages under the FCRA.  In fact, such a recovery is consistent with what courts have found to be a reasonable recovery in other notice claims like with FCRA settlements.  *See, e.g.*, *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611, 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007) (finally approving payments up to $100 for class members who submit claims with *pro rata* reduction if total claims exceed available balance after settlement expenses costs deducted); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 470, 477 (W.D. Va. 2011) (finally approving proportional payments up to $100, but no less than $2, for class members who submit claim forms).[5]

NYC Class Members who submit timely Claim Forms are entitled to additional monetary compensation of $1,700.00 if, following an Article 23-A analysis of the NYC Class Member's application at the time he or she applied for employment, MSG determines that he or she would have been eligible for employment absent his or her failure to fully and accurately disclose his or

---

[5]    *See also Watkins v. Hireright, Inc.*, No. 13 Civ. 1432, 2016 WL 1732652, at *2, *7 (S.D. Cal. May 2, 2016) (recovery cap to recovery was $200, but class members would receive approximately $58); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 238, 2016 WL 1070819, at *2, *6 (E.D. Va. Mar. 15, 2016) (finally approving settlement where class members would receive either $35 or $75 dollars); *Syed v. M-I LLC*, No. 14 Civ. 742, 2016 WL 310135, at *2, *8-9 (E.D. Cal. Jan. 26, 2016) (same where class members would receive approximately $16).

her conviction history.  *See* Ex. A (Settlement Agreement) § III(B).  This is a significant

recovery for the mostly part-time, seasonal work involved here.[6]

Beyond the cash payments, the settlement requires MSG to undertake substantial

programmatic changes to benefit, in Plaintiffs' view, all Class Members and future applicants

who have faced challenges in their efforts to gain meaningful employment because of their

criminal records.  Among some of these changes described above, MSG has agreed to revise its

criminal history self-disclosure statement including to advise applicants that they need not

disclose criminal convictions for possession of marijuana (except for convictions for possession

with intent to sell), grant YR the opportunity to conduct a one-time presentation for employees

involved in the evaluation of criminal background check results regarding relevant laws, and

appoint an employee to monitor the implementation of these terms.  *See id.* §§ IV(A)-(L).

Most significantly, MSG has agreed to revise its self-disclosure policy in order to

potentially decrease the number of applicants who are disqualified from employment because of

statements or omissions that were previously deemed a failure to fully and accurately disclose

one's criminal conviction history.  To that end, MSG has agreed to cut its bar on reapplying

because of inaccurate self-disclosures from a lifetime ban to two years.  *See id.* § IV(K).  Further,

MSG will not revoke conditional offers of employment because of applicants' failure to disclose

open warrants, will only ask applicants to disclose criminal record histories going back five

years,[7] and will provide notice and an opportunity to cure to applicants who do not fully and

accurately disclose their criminal record histories.  *See id.* §§ IV(G)-(I); *see also* Ex. 5 (Criminal

History Disclosure) to Ex. A (Settlement Agreement).

---

[6]    Based off information disclosed by MSG, this is an excellent potential recovery.  The potential damages for each class member equals approximately $615.80 per class member annually.  *See* Miazad Decl. ¶ 31.

[7]    This provision is especially relevant because it limits the chance that applicants will fail to disclose old convictions they may no longer clearly remember.

Additionally, Plaintiffs have achieved equitable revisions aimed at ensuring that job applicants will be provided with notification of their FCRA rights *before* an adverse action is taken, although MSG claims that it has always done so.  *See id.* § IV(B).  These equitable revisions are all the more significant given that the FCRA does not provide for injunctive relief and these revisions could not have been achieved absent this settlement.  *See White v. First Am. Registry, Inc.*, 378 F. Supp. 2d 419, 424 (S.D.N.Y. 2005) (holding injunctive and declaratory relief unavailable to private parties under FCRA); *cf. Watkins*, 2016 WL 1732652, at *7 (including equitable relief as benefit when weighing fairness of FCRA settlement).

In sum, the terms of the Settlement Agreement are fair and reasonable, as evidenced by application of the relevant *Grinnell* factors.

## II.   <u>Conditional Certification of the Class Is Appropriate</u>

For settlement purposes, Plaintiffs seek to certify the FCRA and NYC Classes under Rule 23.  *See supra* Summary of the Settlement Terms §§ I-VIII; *see also* Ex. A (Settlement Agreement) §§ II(S), II(AA).[8]  The settlement classes satisfy Rule 23's requirements.[9]

### A.   **Numerosity Is Satisfied.**

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).  According to information produced by MSG, there are almost 400 FCRA Class Members and over 200 NYC Class Members.  Miazad Decl. ¶ 27.  Both classes easily satisfy this requirement.

### B.   **Commonality Is Satisfied.**

The proposed classes also satisfy the commonality requirement, the purpose of which is

---

[8]   The NYC Class is a subset of the FCRA Class and excludes all individuals that MSG can establish would have been denied employment after MSG conducted an Article 23-A analysis using the information it had at the time of the application.   Ex. A (Settlement Agreement) §§ II(S), II(AA).

[9]   MSG does not contest class certification for the purpose of settlement only.

to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, all members of the FCRA and NYC Classes are unified by common factual allegations and legal theories—they all were alleged to be improperly denied employment by MSG without an individualized inquiry seeking information regarding the circumstances of their criminal history, being provided pre-adverse action notice packets (*i.e.* consumer reports and statements of FCRA rights) or, after the enactment of the Fair Chance Act, a Fair Chance Act Notice. Further, the individuals in the NYC Class were all denied employment based on MSG's policy to revoke conditional offers of employment where applicants fail to fully or accurately disclose their criminal conviction history. *See Times v. Target Corp.*, No. 18 Civ. 2993, 2018 WL 3238821, at *1-2 (S.D.N.Y. May 14, 2018) (preliminarily approving settlement class challenging defendants' background check policies and practices); *Kelly v. Brooklyn Events Ctr., LLC et al*, No. 17 Civ. 4600 (E.D.N.Y.), Oct. 2, 2018, Minute Order (same).

### C.    Typicality Is Satisfied.

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, like the putative FCRA Class, Plaintiffs allege that they were denied employment because of their background checks without an individualized inquiry or having been provided a pre-adverse action notice packet or a Fair Chance Act Notice.  *See* FAC ¶¶ 1-5, 46-49, 60-64. Plaintiffs also allege that their conditional offers of employment were revoked because of MSG's policy relating to their application self-disclosures.  *Id.*  Typicality is met because Plaintiffs and all putative class members were subjected to the same procedures, which Plaintiffs challenge. *See Times*, 2018 WL 3238821, at *1; *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97-98 (S.D.N.Y. 2010).

### D.     Adequacy of the Named Plaintiffs Is Satisfied.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted).  "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens*, 181 F.R.D. at 259) (internal quotation marks omitted).

Plaintiffs Millien and Kelly meet the adequacy requirement because there is no evidence that they have interests that are antagonistic to or at odds with those of putative class members. *See Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (adequacy satisfied where, *inter alia*, there was no evidence that named plaintiffs' and class members' interests were at odds).  Further, Plaintiffs have suffered the same alleged state and federal violations as members of the putative classes.

### E.     Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks omitted)). For the purposes of settlement, these requirements are met.

### 1.     Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *See McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiffs' common contentions—that MSG's criminal history screening policies were used to deny employment opportunities to otherwise qualified applicants and that MSG failed to provide job applicants with pre-adverse action notice packets or Fair Chance Act Notices—predominate over any issues affecting only individual class members. *See Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 80-81 (S.D.N.Y. 2018) (finding that common issues

predominated on disparate impact claims challenging the company's promotion practices under Title VII); *Times*, 2018 WL 3238821, at *1 (finding allegations that defendants excluded applicants based on criminal history predominated for settlement purposes); *see also Easterling v. Conn. Dep't of Corr.*, No. 08 Civ. 826, 2011 WL 5864829, at *8 (D. Conn. Nov. 22, 2011).

### 2.  A Class Action Is a Superior Mechanism.

Rule 23(b)(3) next considers whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.[10]  Fed. R. Civ. P. 23(b)(3).

Here, certification of the settlement classes is "superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Capsolas*, 2012 WL 1656920, at *2.  Plaintiffs and members of the FCRA and NYC Classes have limited financial resources with which to prosecute individual actions.  Employing the class device here will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and inconsistent adjudications.

### III.  Plaintiffs' Counsel Should Be Appointed as Class Counsel

O&G and YR should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in

---

[10]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in evaluating a settlement class.  *See Amchem*, 521 U.S. at 620.

identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23, advisory committee's notes to 2003 amendment.

Plaintiffs' Counsel satisfy these criteria. They have done substantial work identifying, investigating, negotiating, and settling Plaintiffs' and putative class members' claims. Miazad Decl. ¶¶ 9-26; Declaration of Michael Pope ("Pope Decl.") ¶ 8. Plaintiffs' Counsel have substantial experience prosecuting and settling employment class actions, including background check cases. Miazad Decl. ¶¶ 4-8. Plaintiffs' Counsel are well-versed in the impediments to employment that criminal records create and are at the forefront of litigating issues of criminal history discrimination. *Id.* ¶ 4; Pope Decl. ¶¶ 1, 4-6; *see, e.g.*, *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248 (S.D.N.Y. 2014); (finding O&G and non-profit partners "bring to the case a wealth of class action litigation experience" and were adequate to represent approximately a half-million person Black and Latino job applicant class in background check litigation); *see also Kelly*, No. 17 Civ. 4600 (E.D.N.Y. Oct. 2, 2018) (preliminarily approving O&G and YR as settlement class counsel); *Times*, 2018 WL 3238821, at *1 (approving O&G and non-profit partners as "experienced counsel" when preliminarily approving criminal background check settlement); *Keels v. Geo Grp., Inc.*, No. 15 Civ. 6261, 2017 WL 4477000, at *1 (E.D.N.Y. Oct. 1 2017) (appointing O&G as class counsel in FCRA case; granting final approval on Feb. 23, 2018); *Pickett v. SIMOS Insourcing Sols., Corp.*, No. 17 Civ. 1013, 2017 WL 3444755, at *1 (N.D. Ill. Aug. 10, 2017) (appointing O&G as class counsel in FCRA case).

## IV.    The Notices and Award Distribution Process are Appropriate

The Notices and Claim Form fully comply with due process and Rule 23(c)(2)(B).  They are written in plain English and organized and formatted to be as clear as possible.  Fed. R. Civ. P. 23(c)(2)(B).  They are based on the model notices provided by the Federal Judicial Center ("FJC").[11]  *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 WL 5508296, at *2 (S.D.N.Y. Dec. 22, 2010).  They describe the settlement's terms, inform class members about the fees and costs allocation, explain how to opt out or object, and will provide the date, time, and place of the fairness hearing.  *See* Ex. A (Settlement Agreement), Ex. 1 (FCRA Class Notice); Ex. 2 (NYC Class Notice); Ex. 3 (NYC Class Claim Form).

The Settlement Administrator will mail and e-mail the Notices and Claim Form to class members, create and administer a website, take reasonable steps to obtain correct addresses of class members whose notice is returned as undeliverable, attempt re-mailing, and send reminder notices by mail and e-mail.  *See* Ex. A (Settlement Agreement) §§ VIII(B)-(D).  The Claim Form, required only for participation in the NYC Class, is simple and straightforward, and can be returned by mail, email, fax, or via a case website.  *See* Ex. 3 (NYC Class Claim Form) to Ex. A (Settlement Agreement).

## CONCLUSION

For these reasons, Plaintiffs respectfully ask that the Court grant this motion.[12]

Dated: June 24, 2019
New York, New York

Respectfully submitted,

*/s/ Ossai Miazad*
**OUTTEN & GOLDEN LLP**
Ossai Miazad

---

[11]    *See* Federal Judicial Center, *Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide*, https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide (last visited June 24, 2019).
[12]    For the Court's convenience, a Proposed Order Granting Plaintiffs' Motion for Preliminary Approval of the Settlement is attached as Exhibit B to the Miazad Declaration.

Lewis M. Steel
Christopher M. McNerney
Cheryl-Lyn Bentley
Nina T. Martinez
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

**YOUTH REPRESENT**
Michael C. Pope
Eric Eingold
11 Park Place, Suite 1512
New York, New York 10007
Tel: (646) 759-8080

*Attorneys for Plaintiffs and the Putative
Settlement Classes*