| | |
|---|---|
| **OUTTEN & GOLDEN LLP**<br>Ossai Miazad<br>Christopher M. McNerney<br>Nina T. Martinez<br>685 Third Avenue, 25th Floor<br>New York, New York 10017 | **YOUTH REPRESENT**<br>Michael C. Pope<br>Eric Eingold<br>11 Park Place, Suite 1512<br>New York, New York 10007 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CLINT MILLIEN and FELIPE KELLY, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br>v.<br><br>THE MADISON SQUARE GARDEN COMPANY and MSGN HOLDINGS, L.P.,<br><br>                      Defendants. | No. 17 Civ. 4000 (AJN) (SLC) |

**DECLARATION OF OSSAI MIAZAD IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES
AND FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF
<u>ATTORNEYS' FEES AND COSTS, AND APPROVAL OF SERVICE AWARDS</u>**

I, Ossai Miazad, declare under penalty of perjury as follows:

1.      I am a partner at the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' counsel herein, and co-chair of O&G's Discrimination and Retaliation Practice Group. O&G is a firm of about 74 attorneys based in New York City, with offices also in Chicago, San Francisco, and Washington D.C., which focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve criminal history, discrimination, and wage and hour claims, as well as contract and severance negotiations.

2. I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Background and Experience**

4. I received a Juris Doctor degree from American University Washington College of Law in 2004. Since joining O&G in 2007, I have exclusively represented plaintiffs in employment litigation and other employee rights matters, with a focus on representing employees in class action and impact litigation involving discrimination. I currently serve as Class Counsel in numerous major class action lawsuits involving challenges to the use of criminal history records for employment decisions.

5. I am the Co-Chair of O&G's Discrimination and Retaliation Practice Group and the Co-Chair of the Subcommittee on USERRA for the American Bar Association's ("ABA") Labor and Employment Law Section, Fair Labor Standards Legislation Committee. I have also served on the New York City Bar Association's Committee on Civil Rights and as a board member of the New York affiliate of the National Employment Lawyers Association ("NELA").

6. I have been appointed as Class Counsel in many cases, including *Gonzalez v. Pritzker*, No. 10 Civ. 3105 (S.D.N.Y.), a nationwide class action targeting the U.S. Census Bureau's criminal history screening process as having a racially disparate impact under Title VII of the Civil Rights Act of 1964 ("Title VII"). I have litigated or am litigating multiple other criminal history discrimination class actions, including *Times, et al., v. Target Corp.*, No 18. 2993 (S.D.N.Y.) (Title VII disparate impact action on behalf of African-American and Latino applicants), *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600 (E.D.N.Y.) (FCRA and New York City Human Rights Law ("NYCHRL") criminal history discrimination claims), *Long v.

2

*Southeastern Pennsylvania Transportation Authority*, No. 16. Civ. 1991 (E.D. Pa.) (FCRA and Pennsylvania Criminal History Record Information Act claims); *see also* 903 F.3d 312 (3d Cir. 2018) (substantially prevailing on appeal of dismissal of FCRA claims on standing grounds), *Keels v. Geo Group, Inc.*, No. 15 Civ. 6261 (E.D.N.Y.) (FCRA claims under Section 1681b(b)(3)), *The Fortune Society, Inc. v. Macy's Inc.*, No. 19 Civ. 5961 (S.D.N.Y.) (Title VII and NYCHRL criminal history discrimination claims,); *Pickett v. SIMOS Insourcing Solutions, Corp.*, No. 17 Civ. 1013 (N.D. Ill.) (FCRA claims under Section 1681b(b)(2) and (b)(3)), *Mandala v. NTT Data, Inc.*, No. 18 Civ. 6591 (W.D.N.Y.) (Title VII criminal history discrimination claims), and *NAACP New York State Conference Metropolitan Council of Branches v. Philips Electronics North America Corporation*, Index No. 156382/2015 (Sup. Ct. N.Y. Cnty.) (NYCHRL criminal history discrimination claims).

7. The attorneys at O&G are experienced, highly regarded members of the plaintiffs' employment bar with extensive expertise in the area of class actions and complex litigation involving discrimination like those at issues in this litigation. Courts have repeatedly recognized O&G as qualified counsel for class actions. *See*, *e.g.*, *Times, et al., v. Target Corp.* No 18. 2993, slip. op. at 8 (S.D.N.Y. Oct. 29, 2019) (O&G attorneys are "nationally recognized employment class action litigators"); *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600, 2019 WL 4316125, at *2 (E.D.N.Y. Sept. 10, 2019) (O&G attorneys are "experienced class action and employment lawyers with good reputations among the class action and employment bars and significant experience in litigating criminal history discrimination matters"); *Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 WL 5395905, at *4 (S.D.N.Y. Sept. 20, 2016) ("Class Counsel are nationally recognized employment class action litigators . . . . Outten & Golden's resources played a significant role in Class Counsel's ability to pursue this litigation without compensation

over the past six years."); *Hall v. L-3 Communications Corp.*, No. 15 Civ. 231, 2019 WL 3845462, at *4 (E.D. Wash. Jan. 25, 2019) ("The attorneys involved in this case have litigated it expertly, and in their long experience in class action and labor work conclude this settlement is fair and reasonable."); *Pickett v. SIMOS Insourcing Solutions, Corp.*, No. 17 Civ. 1013 (N.D. Ill.) (appointing O&G as class counsel in Fair Credit Reporting Act settlement); *Easterling v. Connecticut, Dep't of Correction*, 08 Civ. 826 (D. Conn.) (appointing O&G as class counsel in a Title VII case); *Jaffe v. Morgan Stanley & Co., Inc.*, No. 06 Civ. 3903 (N.D. Cal.) (race discrimination class action brought on behalf of African American and Latino financial advisors, resulting in settlement of $16 million and comprehensive injunctive relief); *Duling v. Gristede's Operating Corp.,* No. 06 Civ. 10197 (S.D.N.Y.) (appointing O&G as class counsel in a Title VII case); *Amochaev v. Citigroup Global Markets, Inc., d/b/a Smith Barney*, No. 05 Civ. 1298 (N.D. Cal.) (gender discrimination class action brought on behalf of a national class of female financial advisors, resulting in settlement of $33 million and comprehensive injunctive relief); *Wright v. Stern*, No. 01 Civ. 4437 (S.D.N.Y.) (appointing O&G as class counsel in a Title VII case).

8. In addition to my own experience as a class-action litigator in employment disputes, several attorneys and staff worked on this matter. Brief backgrounds for the attorneys and staff who worked on this matter are set forth below:

a. Lewis M. Steel is Senior Counsel to O&G. He has practiced since 1963, primarily in the fields of employment, civil rights, labor, and criminal law. He has tried and argued cases nationally, including in the U.S. Supreme Court, including the precedent-setting employment discrimination decision of *Sumitorno Shoji America, Inc. v. Avagliano*, 457 U.S. 176. His successful employment discrimination class actions have established important legal rights for employees, including as co-lead counsel in the Rubin Carter/John Artis case for which

he was honored by the New York Criminal Bar Association in 2000. He has been listed in The Best Lawyers in America since 1991. New York Law School has awarded him an honorary Doctor of Laws degree for his civil rights work. He has lectured, appeared on television, and written on a wide variety of employment discrimination and civil rights topics. He graduated from Harvard College in 1958 and from New York Law School in 1963, where he was the Editor in Chief of the Law Review.

        b.        Christopher M. McNerney is an associate at O&G. Prior to joining the firm in September 2013, Mr. McNerney clerked in the Southern District of New York for the Honorable Sarah Netburn. He received his B.A. cum laude from Macalester College in 2005 and his J.D., cum laude, from New York University School of Law in 2012. Mr. McNerney was named a 2017 Trial Lawyer of the Year by Public Justice. In addition to this case, Mr. McNerney has worked with me on multiple criminal history discrimination class actions, including *Long v. Southeastern Pennsylvania Transportation Authority*, No. 16. Civ. 1991 (E.D. Pa.) (FCRA and Pennsylvania Criminal History Record Information Act claims); *Keels v. Geo Group, Inc.*, No. 15 Civ. 6261 (E.D.N.Y.) (FCRA claims under Section 1681b(b)(3)); *Pickett v. SIMOS Insourcing Solutions, Corp.*, No. 17 Civ. 1013 (N.D. Ill.) (FCRA claims under Section 1681b(b)(2) and (b)(3)); *Mandala v. NTT Data, Inc.*, No. 18 Civ. 6591 (W.D.N.Y.) (Title VII criminal history discrimination claims); *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600 (E.D.N.Y.) (FCRA and NYCHRL criminal history discrimination claims); *Gonzalez v. Pritzker*, No. 10 Civ. 3105 (S.D.N.Y.) (Title VII criminal history discrimination claims); and *NAACP New York State Conference Metropolitan Council of Branches v. Philips Electronics North America Corporation*, Index No. 156382/2015 (Sup. Ct. N.Y. Cnty.) (NYCHRL criminal history

discrimination claims); *Times, et al., v. Target Corp.*, No 18. 2993 (S.D.N.Y.) (Title VII disparate impact action on behalf of African-American and Latino applicants).

        c.        Cheryl-Lyn Bentley was an associate at O&G from September 2015 to September 2019. Prior to joining O&G in 2015, Ms. Bentley clerked for The Honorable Chief Judge Petrese B. Tucker of the United States District Court for the Eastern District of Pennsylvania. Ms. Bentley received her B.A. from Harvard University in 2006 and her J.D. from Yale Law School in 2011.

        d.        Nina Martinez is an associate at O&G. Prior to joining the firm's New York office in September 2017, Ms. Martinez served as a Skadden Fellow at the New York Legal Assistance Group where she developed the Employment Mediation Project. Ms. Martinez received her B.A. from the University of Florida in 2010, a M.S. in Elementary Education from Hunter College in 2012, and her J.D. from the University of Pennsylvania School of Law in 2015. Ms. Martinez has worked on other employment and civil rights class action cases, including *Rodriguez v. The Procter & Gamble Co.*, No. 17 Civ. 422652 (S.D. Fla.); *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600 (E.D.N.Y.) (FCRA and NYCHRL criminal history discrimination claims); *Hall v. L-3 Commc'n Corp.*, No. 15 Civ. 231 (E.D. Wash.) and *Schriver v. Golden Corral Corp.*, No. 17 Civ. 00136 (S.D. Ohio).

        e.        Cristina Schrum-Herrera was an associate at O&G from October 2016 to June 2018. Ms. Schrum-Herrera received her J.D. from the University of California, Berkeley School of Law in 2016 and her B.A. in Political Science from Swarthmore College in 2008.

        f.        Daniel S. Stromberg is an E-Discovery Counsel at O&G. Prior to joining O&G in July 2015, he received his B.A. from the University of Rochester in 2004 and his J.D. from The George Washington University Law School in 2007.

    g. Moira Heiges-Goepfert is an associate at O&G.  Prior to joining O&G in March 2017, she clerked with the Honorable Jon O. Newman, U.S. Court of Appeals for the Second Circuit, and the Honorable Valerie Caproni, U.S. District Court for the Southern District of New York.  Prior to joining O&G, she worked as a litigation associate at Cleary Gottlieb Steen & Hamilton, while volunteering pro bono with the Legal Aid Society (NYC) and Open Hands Legal Services.  Ms. Heiges-Goepfert earned her B.A. at Yale University, and then taught English for three years at a public university in Beijing before completing her J.D. at the University of Minnesota Law School.

    h. Hector E. Durant was a paralegal at O&G from March 2016 to January 2019.  Prior to joining O&G, he was a contract paralegal and legal assistant at the U.S. Securities and Exchange Commission.  Prior to that, he worked as paralegal/case manager for Kreindler & Kreindler, LLP, where he enrolled clients and filed claims with federal and private compensation programs, including the Zadroga Act and Deepwater Horizon Settlements.  He received his B.S. in Legal Assistant Studies, cum laude, from New York City College of Technology.

    i. Michelle Fujii is a paralegal at O&G.  Prior to joining O&G in August 2018, she attended Antioch College, in Yellow Springs, Ohio, from which she graduated summa cum laude with a B.A. in Interdisciplinary Studies in Ecology, Culture, and Politics with language focuses in Spanish and Japanese. Her previous professional experiences include working as a Foreign Affairs Aide at the Research Center for Nuclear Weapons Abolition at Nagasaki University in Japan; as a legal assistant at the Law Office of Phillip Brigham, LLC in Chicago, IL; and as a paralegal intern at O&G in 2015.

**Factual and Procedural Background**

**I.     Pre-Suit Outreach**

9.     Class Counsel, who are well-aware of the complexity of cases like this one and the value of early collaborative settlement discussions, sent MSG's counsel a letter on June 20, 2016, advising it of Plaintiffs' claims.

10.    In preparing this correspondence, Class Counsel engaged in a substantial investigation that included review of Plaintiff Millien's facts and documents in his possession, legal research, interviews of potentially impacted applicants, and an inquiry into MSG and its background check practices.

11.    On October 25, 2016, the Parties held an in-person meeting attended by Class Counsel, MSG's outside counsel, MSG's Deputy General Counsel, and MSG's Vice President of Employment Law.  The Parties were unable to arrive at a pre-suit resolution, and Plaintiff Millien filed suit.

**II.    Overview of Litigation**

12.    From October 2017 to August 2018, the Parties vigorously litigated this case. During this time, the Parties engaged in substantial written discovery.

13.    Plaintiffs twice amended their complaint, adding a new named Plaintiff, Felipe Kelly, as well as new claims based on information learned through their investigation and from MSG.

14.    At the threshold, they negotiated a robust electronic discovery stipulation, which they filed with the Court on October 3, 2017, ECF No. 33, and a confidentiality stipulation, which was filed with the Court on December 21, 2017, ECF No. 41.  After these agreements were in place, the Parties engaged in full written discovery of Plaintiffs, production by MSG of

over 10,000 pages of documents, and the deposition of MSG's Director of Policy and Compliance.

15.     The Parties also expended significant time in preparation for the depositions of Plaintiffs, and the deposition of MSG's former Director of Policy and Compliance, and a Federal Rule of Civil Procedure 30(b)(6) witness—which all would have occurred in short order in preparation for class certification briefing.

16.     Throughout the period before the stay was requested, the Parties exchanged multiple correspondence and engaged in dozens of meet and confers over discovery. While the Parties were largely successful in resolving (or narrowing) their disputes, Plaintiffs invoked the Court's assistance twice to resolve specific disputes. *See* ECF Nos. 49, 51, 53-54, 56, 57, 61-63, 68.

17.     Plaintiffs also served third-party subpoenas on two vendors MSG used to run background checks on applicants during the class period, and extensively negotiated the production of class member information from those vendors. These discussions were complicated and time consuming, involving lengthy discussions over the information the vendors possessed, their capacity (and willingness) to produce it, and how and in what form it could be produced, which ultimately involved the vendors building out specific programs to collect the disparate information in their systems. As a result of these efforts, the vendors produced over 74,000 Excel entries and 99 fields of information, including every applicant to MSG who had a background check run on them, the criminal history information they self-disclosed, the criminal history information the vendors uncovered, the vendors' review of the two, and MSG's notes as to the applicants—among other information crucial to determining the scope of the class and the individuals potentially impacted by the policies and practices challenged in this suit.

18. After completing nearly all the discovery needed to move for class certification, on August 14, 2018, approximately four weeks before the scheduled close of discovery, the Parties jointly requested that the Court stay the action to explore settlement. ECF No. 72.

### III. Settlement Negotiations

19. The Parties thoroughly vetted their claims and defenses through approximately nine months of settlement discussions and three in-person meetings, resulting in the settlement for which they now seek judicial approval.

20. Since Plaintiffs' initial attempt to resolve the case pre-suit, the Parties participated in numerous telephone and email conversations about the possibility of settlement discussions. To this end, the Parties attended a comprehensive day-long settlement meeting on September 13, 2018.

21. Following the September 13, 2018 in-person settlement conference, the Parties had numerous additional settlement discussions and exchanged a series of written counter-proposals as to a framework for settlement.

22. After laying this groundwork, the Parties agreed to attend mediation before Dina R. Jansenson, a well-respected employment and class action mediator.

23. In advance of mediation, the Parties exchanged detailed mediation briefs outlining their respective evaluations of the strengths and weaknesses of the claims at issue. Plaintiffs also conducted a preliminary damages analysis for purposes of settlement negotiations.

24. On December 5, 2018, the Parties participated in a day-long mediation with Ms. Jansenson. Although the Parties made significant progress, after concluding a full day of arm's-length negotiations, they were unable to reach a resolution but agreed to continue negotiating with the assistance of Ms. Jansenson.

25. The Parties convened for a second day of mediation with Ms. Jansenson on February 28, 2019.

26. After almost 15-hours of intensive arm's-length negotiations the Parties reached an agreement in principle as to the structure of the settlement.

27. Over the next approximately three months, the Parties negotiated a detailed Term Sheet. *See* ECF Nos. 80-85. Following agreement on many substantive issues presented by the Term Sheet, the Parties concurrently began negotiating the Settlement Agreement and supporting documents (including the Notices and Claim Form).

28. On or about June 17, 2019, the Parties executed the Settlement Agreement.

29. Since executing the Settlement Agreement, Class Counsel has spent significant time responding to Class Member questions regarding the settlement terms and working with the Settlement Administrator to ensure notice is timely and accurately issued.

**The Settlement**

30. This case involves approximately 227 FCRA Class Members and an additional 281 NYC Class Members, providing a complicated interplay of multiple laws governing how an employer evaluates the criminal history of job applicants.

31. This case also is (to Plaintiffs' Counsel's knowledge) the first class action challenging an employer self-disclosure policy under the New York City Human Rights Law, and thus required additional care to research, draft the complaint, and craft a litigation and settlement strategy, and poses additional risk to litigate.

32. Plaintiffs are confident that their claims would be successful at trial. However, class actions under the NYCHRL, FCRA, and NY FCRA are subject to real risk. This is especially true here, where Plaintiffs' legal theory is novel and untested.

33. Should the case move to contested litigation, Plaintiffs would likely face extensive discovery disputes relating to the remaining discovery issues, strong opposition to class certification, *Daubert* challenges to Plaintiffs' experts, and a motion for summary judgment. If Plaintiffs were able to overcome these hurdles, a trial on the merits would involve significant risk as to both liability and damages.

34. For example, O&G's background check discrimination case against the U.S. Census Department, which spanned over six years and at least 28 conferences involving the Court, also involved three separate motions to dismiss in addition to the defendants' opposition to class certification and *Daubert* challenges to their expert witnesses.

35. While Plaintiffs believe they could ultimately defeat MSG's defenses and establish liability, this would require significant factual development and favorable outcomes at trial, and on appeal, all of which are inherently uncertain and lengthy.

36. This is a significant recovery for the predominantly part-time, seasonal work involved here. Based on information provided by MSG, lost pay was estimated at approximately $615.80 per person annually.

**Notice to the Class and Class Response**

37. On August 23, 2019, MSG produced to the Settlement Administrator a list of all applicants who it had determined were eligible as FCRA and NYC Class Members.

38. The specific efforts taken to provide adequate notice to all Class Members and the result, including the response of the Classes, is outlined in the Declaration of Jennifer Keough, attached as **Exhibit B** to this Declaration.

39.     Of the 281 NYC Class Members eligible to receive an enhanced monetary award, 131 Class Members have submitted valid Claim Forms (46% of the NYC Class). This is a very robust participation rate for a case of this size.

40.     Only one Class Member submitted an objection to the settlement (the "Objector"), objecting to the individual monetary relief for the NYC Class. ECF No. 104. A copy of the objection is attached as **Exhibit H** to this Declaration. While one Class Member submitted an objection to the individual monetary relief, no Class Member has objected to the requested attorneys' fees or expense reimbursement. Further, no Class Member has objected to the requested service awards.

41.     Class Counsel recently contacted counsel for MSG regarding a FCRA Class Member who believed he should have been part of the NYC Class. As a result of this intervention, MSG consented to include the individual in the NYC Class and re-issued NYC Class Notice. The Settlement Administrator issued the NYC Class Notice to that individual on October 24, 2019 and the individual has until November 25, 2019 to submit a Claim Form.

42.     MSG sent notices to federal and state authorities as required by the Class Action Fairness Act ("CAFA") on July 10, 2019.

**Plaintiffs' Efforts in Bringing and Litigating the Case**

43.     Plaintiffs made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.

44.     Plaintiffs' actions resulted in substantial benefits to the Classes: significant revisions to how MSG treats applicants with criminal records, as well as a guaranteed payment of $200 to all members of the FCRA Class and additional compensation of $1,700 for members

of the NYC Class, applicants who were denied employment based on MSG's determination that they failed to fully or accurately disclose their criminal conviction history.

45. At the outset, Plaintiffs assisted Class Counsel in investigating the claims and preparing the Complaint by providing documents in their possession relevant to MSG's hiring processes.

46. Throughout the litigation, Plaintiffs communicated with Class Counsel and assisted them with preparing for briefing related to discovery disputes, providing crucial context as to MSG's policies and practices.

47. Plaintiffs also worked closely with Class Counsel to respond to extensive interrogatories and requests for documents.

48. Plaintiffs spent significant time with Class Counsel preparing for their depositions which were twice scheduled and canceled at MSG's request.

49. When the Parties pivoted to discussing resolution of the dispute, Plaintiffs worked with Class Counsel as they reviewed information in advance of a comprehensive in-person meeting with counsel for MSG. In advance of mediation, Plaintiffs assisted Class Counsel in the drafting of a comprehensive mediation statement.

50. Plaintiffs made themselves available by telephone for the initial settlement meeting and both mediations. Class Counsel consulted with Plaintiffs throughout the several months of settlement negotiation. Plaintiffs also reviewed and approved the settlement terms.

51. With their names front and center on the caption, Plaintiffs faced risk that current or future employers might retaliate against them for agreeing to bring this suit.

52. The requested service awards were negotiated separately and are not a portion of the total amount available to Class Members—*i.e.*, their payment will not diminish at all Class Members' recovery.

**Attorneys' Fees and Costs**

53. Class Counsel seek compensation for the approximately three years of work expended on achieving this settlement. Counsel's fees and costs recovery of $750,000.00 was negotiated separately from the significant injunctive and monetary relief achieved for the Classes. Even so, the request is significantly less than Plaintiffs' fees and costs to date, which also do not account for Class Counsel's ongoing work in this matter, including the administration of injunctive relief subsequent to final approval. Further, unlike in most class settlements, the total monetary relief will not be reduced by attorneys' fees or costs.

54. Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.

55. Counsel have spent approximately 3,456 attorney, paralegal, and support staff hours investigating and negotiating the settlement of this case. Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of $1,732,875.50. The requested fee represents only 43.3% of Class Counsel's actual lodestar to date.

56. As evidenced in the below graph, the requested fee represents $1,014,414.22 (or 41.5%) less than Counsel's actual lodestar and costs.

| Firm | Fees | Hours | Costs |
|---|---|---|---|
| Outten & Golden LLP | $ 1,617,053.00 | 3142 | $31,538.72 |
| Youth Represent | $ 115,822.50 | 314.1 | - |
| **TOTAL** | **$ 1,732,875.50** | **3,456.1** | **$31,538.00** |
| **GRAND TOTAL: $1,764,414.22** | | | |

57.     While Class Counsel are not separately seeking costs in addition to the $750,000.00 award, O&G has disbursed $31,538.72 in costs necessarily expended to litigate the case. A summary of O&G's costs is attached as **Exhibit D** to this Declaration. These expenses include, expert fees, court fees, postage, transportation, printing, copying, conference calls, electronic research, meals, and messenger fees. Here, Class Counsel's expenses were incidental and necessary to the representation of the Classes, and are in line with costs charged to individual clients who pay out-of-pocket.

58.     While one Class Member submitted an objection, *no* Class Member has objected to the requested attorneys' fees or expense reimbursement.

59.     The hours expended in this matter are more than reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. I will have available for the Court's review at the Fairness Hearing copies of contemporaneous time records for attorneys and staff who investigated and litigated this action at O&G and YR. For the Court's convenience, O&G has submitted a summary of its time records as **Exhibit C** to this Declaration, and YR has separately submitted their own summaries along with their declaration.

60.     At all times, we used a small team of core attorneys in order to minimize duplication of efforts and maximize billing judgment, and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to perform it effectively.

61.     In addition, our contemporaneous time records were carefully reviewed and duplicative work, as well as *de minimis* time billed by attorneys and staff who had little

participation in the actions, was removed (for example, O&G proactively removed any attorneys or support staff who worked less than ten hours on this matter).

62.  The requested fee is not based solely on time and effort already expended. It is also meant to compensate us for time that will be spent administering the settlement in the future In Class Counsel's experience, overseeing the final steps of the settlement process will require an ongoing substantial commitment. Class Counsel anticipate that they will incur significant additional fees in interacting with the Settlement Administrator and fielding Class Members' questions. Class Counsel's lodestar will also grow as they continue to finalize the settlement process, prepare for the Fairness Hearing, and handle Class Member questions after approval. In addition, as part of the programmatic relief achieved in this settlement, YR has an opportunity to perform a training of MSG employees, which will also involve substantial additional time both in preparation and execution. Ex. A (Settlement Agreement) § IV(E).

63.  Courts in this Circuit have repeatedly approved hourly rates like O&G's as reasonable. *See Williams v. Metro-N. R.R. Co.*, No. 1:17 Civ. 3847, 2018 WL 3370678, at *5 (S.D.N.Y. June 28, 2018), *report and recommendation adopted*, No. 17 Civ. 3847, 2018 WL 3368713 (S.D.N.Y. July 10, 2018) (noting that O&G "counsel are of the highest quality with special expertise in the law of employment discrimination. This Court is well familiar with counsel's excellent reputation and observed their work in this case, which lived up to that reputation" and approving counsel rates from $800-$275); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 9194, 2010 WL 2010 4877852, at *22 (S.D.N.Y Nov. 30, 2010) (accepting hourly rates of $400 to $750 per hour for lodestar crosscheck); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (noting that partner hourly rates of $700 to $750 "fall within the norm of the rates charged by those attorneys' common adversaries in the defense bar"); *In re Ind.*

*Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, *9 (S.D.N.Y. 2003) (noting that rates of $650 per hour for a partner and $300 to $425 per hour for associates is "not extraordinary for a topflight New York City law firm").

64. Further, in settlements like *Gonzalez v. Pritzker*, *Kelly v. Barclays*, and *Times v. Target*, the district courts evaluated, and approved, the reasonableness of the fee award negotiated by the parties through a comparison to lodestar based on O&G's current hourly rates.

65. Additionally, the rates sought by O&G's attorneys are routinely paid by clients seeking hourly attorney work. The "usual hourly billing rates charged to paying clients . . . are reasonable rates of compensation for their work in this action." *Meriwether v. Coughlin*, 727 F. Supp. 823, 831 (S.D.N.Y. 1989); *cf. Norwest Fin., Inc. v. Fernandez*, 121 F. Supp. 2d 258, 262-63 (S.D.N.Y. 2000) (rejecting challenge to reasonableness of fee request where counsel provided declaration indicating that client was "billed on the basis of services provided at fixed hourly rates which were charged at [counsel's] usual and customary rates"). Even "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court" because "[l]awyers do not come from cookie cutters." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) (Easterbrook, J.); *see also Tamazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm."). Courts in this Circuit give great weight to counsel's actual hourly rates. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (finding that actual rates charged to clients is "strong evidence of what the market will bear"); *Reiter v. Metro. Transp. Auth. of New York*, No. 01 Civ. 2762, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004) (noting that "the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate"); *Lilly v. County of Orange*, 910 F. Supp. 945,

949 (S.D.N.Y. 1996) (finding that the "actual rate that counsel can command in the market place is evidence of the prevailing market rate").

66. As one particularly relevant example, O&G Class Counsel, including Mr. McNerney, have repeatedly taken on hourly work at their regular rates representing individuals denied employment because of their criminal histories.

**Exhibits**

67. Attached hereto as **Exhibit A** is a true and correct copy of the Settlement Agreement executed on June 17, 2019. The following exhibits are attached to the Settlement Agreement:

    a. **Exhibit 1** (FCRA Class Notice);

    b. **Exhibit 2** (NYC Class Notice);

    c. **Exhibit 3** (NYC Class Claim Form);

    d. **Exhibit 4** (Proposed Order for Preliminary Approval); and

    e. **Exhibit 5** (Criminal History Disclosure Form).

68. Attached as **Exhibit B** is the declaration of Jennifer Keough Re: Settlement Administration ("Keough Decl."). Ms. Keough is an employee of JND Legal Administration. The following exhibits are attached to the Keough Declaration:

    a. **Exhibit 1** (NYC Class Notice and Claim Form);

    b. **Exhibit 2** (FCRA Notice); and

    c. **Exhibit 3** (Exclusion Request).

69. Attached as **Exhibit C** is a summary of the time spent by Class Counsel in this litigation through September 27, 2019.

70. Attached as **Exhibit D** is a true and correct copy of summary of the costs incurred

in this litigation through September 27, 2019.

71.     Attached as **Exhibit E** is the July 30, 2015 Hearing Transcript for *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637 (E.D.N.Y.).

72.     Attached as **Exhibit F** is the [Proposed] Order Granting Plaintiffs' Motions for Certification of the Settlement Classes and Final Approval of the Class Action Settlement, Approval of Attorneys' Fees and Costs, and Approval of Service Awards.

73.     Attached as **Exhibit G** is the Declaration of Adam T. Klein in Support of Plaintiff's Motion for Attorneys' Fees and Costs.

74.     Attached as **Exhibit H** is a true and correct copy of the objection received by Defendants' Counsel dated October 9, 2019.

75.     Attached as **Exhibit I** is a true and correct copy of an excerpt of the Hearing Transcript for *Kelly v. Barclays*, No. 17 Civ. 4600 (S.D.N.Y. 2019).

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Dated:   November 4, 2019
         New York, New York

Respectfully submitted,

By: _____
**OUTTEN & GOLDEN LLP**
Ossai Miazad
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000