USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Clint Millien, *et al.*,

                Plaintiffs,

–v–

The Madison Square Garden Company, *et al.*,

                Defendants.

17-cv-4000 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    A hearing was held on November 19, 2019, during which time the Court heard Plaintiffs' Motion for Final Approval of the Class Action Settlement and their Application for Award of Attorney's Fees and Costs and an Incentive Award for the Class Representatives. Having considered the written submissions of the parties, having held a final fairness hearing, and having considered the arguments offered at that hearing, it is hereby ordered that the Class is finally certified and the Settlement is finally approved.

**I.    BACKGROUND**

    Lead Plaintiff Clint Millien filed this lawsuit against Defendants on April 26, 2017 in New York Supreme Court. Defendants then removed this case to federal court, and Plaintiff Millien amended his Complaint, adding another Plaintiff, Felipe Kelly. The Amended Complaint brings several claims. First, Plaintiffs allege that Defendants failed to provide them and proposed class members with copies of their background check report and other required notices *before* deciding not to hire them as required by the federal Fair Credit Reporting Act ("FCRA") (Count 1) and New York Fair Credit Reporting Act ("NY FCRA") (Count 2). *See* Amended Complaint, Dkt. No. 13, ¶¶ 140-158.

1

The FCRA requires that before taking an "adverse action based in whole or in part on [a consumer report]" employers must provide the consumer with "a copy of the report" and "a description in writing" of the rights a consumer has under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i) and (iii). The statute further defines consumer report to include background checks conducted for employment purposes, and defines adverse actions to include "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." *See* 15 U.S.C. § 1681a. The FCRA authorizes statutory damages between $100 and $1,000 per person for "willful noncompliance," in addition to actual damages. *See* 15 U.S.C. § 1681n. The NY FCRA states that when an entity requests background check containing "criminal conviction information," it must "provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law." N.Y. Gen. Bus. Law § 380-g(d). Those who do not comply are liable for actual damages, as well as punitive damages, if non-compliance was willful. *Id.* §§ 380-l; 380-m.

> Article 23-A of the Corrections Law states in the pertinent part:
>
> No application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:
>
> (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
>
> (2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.
>
> N.Y. Correc. Law § 752.

Another section of Article 23-A gives a specific list of factors that an employer must consider when deciding when making a determination pursuant to § 752.  *See* N.Y. Correc. Law § 753.

Second, Plaintiffs claim that when Defendants decided not to hire them and other class members based on a failure to disclose criminal convictions on their applications that were later revealed by a background check, Defendants violated the New York City Human Rights Law ("NYCHRL") by failing to conduct the required analysis under Article 23-A (Count 3).  While Article 23-A does not appear to have a private right of action, the NYCHRL effectively creates one for those who apply to positions in New York City.  It states:

> It shall be an unlawful discriminatory practice for any employer, employment agency or agent thereof to deny employment to any person or take adverse action against any employee *by reason of such person or employee having been convicted of one or more criminal offenses*, or *by reason of a finding of a lack of "good moral character" which is based on such person or employee having been convicted of one or more criminal offenses*, when such denial or adverse action is *in violation of the provisions of article 23-a of the correction law*.
>
> N.Y.C. Admin. Code § 8-107(10)(a) (emphasis added).

The available remedies under this provision are the same for other violations of the NYCHRL, which is the City's primary employment discrimination statute.  Third, Plaintiffs also claim that Defendants' practice of refusing to hire prospective employees based on a failure to disclose criminal convictions was discrimination against Black and Latino applicants on a disparate impact theory in violation of the NYCHRL (Count 4).

A few weeks before discovery closed, but before the bulk of the depositions were conducted, the parties engaged in private mediation.  The result of that mediation is the present settlement.  There are three kinds of relief under the agreement.  All 508 class members (termed the "FCRA Class") will receive a payment of $200.  A subclass of 281 members who applied to jobs in New York City (termed the "NYC Class") will get an opportunity to receive an additional

3

$1,700 payment. After preliminary certification, the NYC class members were required to submit claims forms. For the 132 members that did so, Defendants will then conduct an Article 23-A analysis and determine whether the class member, in light of that analysis, would have been eligible for employment, regardless of whether the class member fully disclosed his or her criminal record. *See* Settlement Agreement at 10-13. Class members who submitted claims forms and were otherwise eligible for employment would then receive $1,700 each. MSG also agrees to implement various policy changes regarding hiring and employment of those with criminal records. The Lead Plaintiffs would each receive $7,500 service awards. The agreed upon amount of attorneys' fees and costs is $750,000.

In exchange, the Defendants are released from "all claims . . . under any legal or equitable theory under the FCRA and/or NY FCRA." *Id.* at 20. Additionally, the NYC Class would release Defendants from "all claims . . . relating to their criminal records, including discrimination claims . . . under Title VII . . . the NY FCRA, the Correction Law, and the NYCHRL." *Id.* at 21.

## II.   CLASS CERTIFICATION

The FCRA Class is defined as "individuals who were denied employment with MSG based on the content of his or her Background Check Report from April 26, 2015 through the date of Preliminary Approval of the Settlement." Settlement Agreement at 7. The NYC Class is defined as "individuals who applied for employment with MSG in New York City, New York and who were denied employment based on MSG's determination that they failed to fully or accurately disclose their criminal conviction history from May 8, 2014 through the date of Preliminary Approval of the Settlement." *Id.* at 8.

For the reasons set forth below, for purposes of this settlement, the Classes are certified because they satisfy the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### A. The Settlement Meets the Rule 23(a) Criteria

Rule 23(a) imposes four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Because the FCRA Class and the NYC Class both have over one hundred members, the numerosity requirement is satisfied.

Commonality and typicality are also satisfied. The commonality requirement examines class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quotation omitted). Both classes involve common questions of law and fact. For the FCRA class, common questions include whether Defendants failed to provide the required reports and notices before declining to hire applicants based on the results of criminal

background checks and whether that failure was willful. For the NYC Class, common questions include whether Defendants conducted Article 23-A analyses when rejecting applicants for failing to disclose criminal convictions and whether such a failure constitutes a violation of Article 23-A and by extension, the NYCHRL. Lead Plaintiffs have claims typical of the classes. They both allege that Defendants rescinded their conditional employment offers after conducting a criminal background check due to Defendants' policy that applicants must fully disclose their criminal histories on their background forms. They allege that they did not receive the reports or required notices before Defendants made their decision. And they both allege that MSG did not and could not have conducted an Article 23-A analysis in their cases.

Lead Plaintiffs also provide adequate representation. Their interests are aligned with those of the class and their claims and the claims of other class members arise out of the same course of conduct. Their representation is adequate even though there is a subclass, because lead plaintiffs are members of both the subclass and the overall class. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 111 (2d Cir. 2005). Furthermore, Lead Plaintiffs' counsel has significant experience litigating these kinds of cases. *See* Dkt. Nos. 96-97; *see also* Fed. R. Civ. P. 23(g).

      **B.**     **The Settlement Class Meets the Relevant Rule 23(b)(3) Criteria**

To meet the requirements of Rule 23(b)(3), the Court must conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The issues in the class action that are "subject to generalized proof, and thus applicable to the class as a whole" must "predominate over those issues subject only to individualized proof." *In re Visa*

*Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3)." *Id.* at 138; *see also In re Nassau County Strip Search Cases*, 461 F.3d 219, 221, 229-30 (2d Cir. 2006). When determining issue predominance for a settlement class, a district court need not consider trial management problems, but instead should focus on "whether the legal or factual questions that qualify each class member's case as a genuine controversy are sufficiently similar as to yield a cohesive class." *In re Am. Int'l Group Secs. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

This litigation largely focuses on whether MSG's hiring practices with regard to criminal background checks were compliant with Federal and New York law. While there could be particular hiring practices that were not applied consistently to each class member, at least for a settlement class, the common questions in this case "are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted); *see In re Am. Int'l Group Secs. Litig.*, 689 F.3d at 240-43; *In re Nassau County Strip Search Cases*, 461 F.3d at 229-30. And although there would likely be individualized damage determinations for members of the NYC class, that is not enough to defeat class certification. *See Roach*, 778 F.3d at 405. Furthermore, a class action is superior to other forms of litigation, as "proceeding individually would be prohibitive due to the minimal recovery." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

### III. NOTICE WAS APPROPRIATE

As required by the Preliminary Approval Order, both the FCRA class and NYC class were provided with written notice of the terms of the Settlement, the procedures for objecting to

the settlement, and the procedures for opting out of the settlement class. All 508 class members were successfully sent a class notice, either by mail or email. *See* Dkt. No. 111-2, ¶ 8. As described above, the notices provided an accurate description of the class settlement in its final form. Of the 281 members of the NYC class, 132 submitted claims forms. Fairness Hearing Tr. 4. Additionally, Defendants provided notice of the settlement to the relevant federal and state authorities pursuant to the Class Action Fairness Act. *See* Dkt. No. 111, ¶ 42.

## IV.  THE SETTLEMENT IS FINALLY APPROVED

A district court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This entails a review of both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). In conducting this review, the Court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quotation omitted).

### A.  The Settlement Is Procedurally Fair

With respect to procedural fairness, a proposed settlement is presumed fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quotation omitted). Here, the settlement was negotiated by experienced counsel after almost fifteen hours with a mediator. The involvement of a mediator is a strong indicator of an arm's-length negotiating process. *Cf. D'Amato*, 236 F.3d at 85. Additionally, a settlement was only reached after full, extensive written discovery and one deposition. Dkt. No. 111, ¶ 14.

### B. The Settlement Is Substantively Fair

In assessing substantive fairness, the Court considers the nine factors detailed by the Second Circuit in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted); *see also Wal-Mart*, 396 F.3d at 117. The Court finds that these factors, individually and weighed against one another, counsel approval of the settlement.

#### 1. The Complexity, Expense and Likely Duration of the Litigation

Fully litigating this case would likely have been complex and expensive. Most of the depositions had yet to have been conducted when the settlement was reached. There likely would have been thorough class certification and summary judgment motions practices. In order to succeed on their class claims, Plaintiffs would have had to prove the existence and consistent application of certain hiring practices. In order to get FCRA statutory damages, Plaintiffs would have had to prove willfulness, which could have been fact intensive. Additionally, the parties would have had to litigate the apparently novel issue of whether Article 23-A and the NYCHRL cover situations when a job applicant is not hired because they failed to fully disclose their criminal history.

#### 2. The Reaction to the Class of the Settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118. The reaction of the class has

9

been positive. Only one class member opted out of the class, and only one class member filed an objection. As an initial matter, the lone objector appears not to have complied with procedures for submitting an objection by failing to submit his objection to class counsel. Furthermore, the issues raised by his objection do not counsel against approval of the settlement. *See* Dkt. No. 104. He argues that the monetary relief is too small and gives his own damages calculation. But as discussed below, the monetary relief in the settlement is significant, particularly in relation to the litigation risks associated with these claims and the seasonal part-time nature of the work at issue. In addition to lost wages, the objector also includes various claims in his damages calculation that either do not exist or are not covered by this settlement. *See id.* (discussing damages for "overall unprofessionalism" and "defamation"). Overall, the reaction of the class supports approval.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

While the parties need not have engaged in extensive discovery, *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir.1982), a sufficient factual investigation must have been conducted to afford the Court the opportunity to "'intelligently make . . . an appraisal' of the Settlement." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer*, 668 F.2d at 660). Here, the parties engaged significant discovery, including production of over 10,000 pages of documents and the deposition MSG's principal compliance officer. *See* Dkt. 111, ¶ 14. The parties also litigated several discovery disputes before Judge Pitman. This factor favors approval.

### 4. The Risks of Establishing Liability

Lead Plaintiffs would have faced substantial risks in establishing liability. On the FCRA and NY FCRA claims, Defendants might have to succeeded in proving that they did send the

required reports and notices to Lead Plaintiffs and other class members before making adverse employment decisions.

Lead Plaintiffs would arguably have faced even more significant risks to establish liability on their NYCHRL Article 23-A claims.  Their legal theory is novel and untested. Defendants argue that they were not required to conduct Article 23-A analyses because they failed to hire Plaintiffs and class members only due to their failure to disclose a criminal conviction.  It is unclear whether deciding not to hire someone based on a failure to disclose a criminal conviction triggers the NYCHRL's Article 23-A requirements for those who are not hired because of their criminal convictions.  *See* N.Y.C. Admin. Code § 8-107(10)(a) (applying Article 23-A for those who are denied employment "by reason of such person or employee having been convicted of one or more criminal offenses, or by reason of a finding of a lack of 'good moral character' which is based on such person or employee having been convicted of one or more criminal offenses."). Although text of the NYCHRL could plausibly be interpreted to reach such situations there are reasons to doubt that reading.  For example, the Article 23-A analysis seems more directed at whether the nature of the conviction makes an applicant unsuitable for employment.  It is unclear how an applicant's lack of candor fits in under Article 23-A.  Finally, Lead Plaintiffs' disparate impact theory appears to be speculative and therefore difficult to substantiate at trial.  This factor weighs strongly in favor of certification.

### 5. The Risks of Establishing Damages

Lead Plaintiffs would have also faced substantial risks in establishing damages. Defendants would have argued that any violations of the FCRA and NY FCRA were not willful, thus precluding statutory damages.  And determining backpay damages for NYC Class members

would be a daunting task, potentially requiring individualized hearings and damages determinations. This factor supports certification.

### 6. The Risks of Maintaining the Class Action Through the Trial

Defendant likely would have opposed certification of a litigation class, arguing for both classes that common questions do not predominate over individual ones.

### 7. The Ability of the Defendants to Withstand a Greater Judgment

The parties did not provide any information with regard to this factor, although Defendants could presumably withstand a greater judgment.

### 8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all of the Attendant Risks of Litigation

"It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quotation omitted). "[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (Friendly, J.).

Here, the Court finds that settlement recovery to be generous in light of risks of further litigating this case. With regard to the FCRA claims, the principal if not sole form of recovery had Lead Plaintiffs succeeded would have been statutory damages, which are limited to $100 to $1,000. *See* 15 U.S.C. § 1681n(a)(1)(A). The NY FCRA does not authorize statutory damages, meaning that classwide monetary relief would likely have been difficult to establish. Thus, $200 per class member would have been well within the potential range of recovery on these claims, even if Lead Plaintiffs largely succeeded at trial. *See White v. First Am. Registry, Inc.*, No. 04-cv-1611, 2007 U.S. Dist. LEXIS 18401, at *5 (S.D.N.Y. Mar. 7, 2007).

Likewise, the Court finds the monetary relief on the NYCHRL claims to be substantively sufficient in light of the litigation risks. The $1,700 number is based on a rough approximation of the wages class members would have received had they been employed. The positions at issue were predominantly seasonal, part-time work, such as food prep, and averaged roughly $615 per year. *See* Dkt. No. 111, ¶ 36; Fairness Tr. 15. That number is based off Defendants' own employment records. Based on the fact that employees from one year often return for multiple years, the parties calculated the average amount of lost wages for class members to be $1,700. Thus, class members who qualify for a payment on these claims will receive same amount of money they likely would have had they successfully litigated their claims to judgment. The Court does have concerns that the monetary relief will be contingent on an Article 23-A analysis conducted by Defendants. Class members and class counsel have virtually no meaningful recourse if Defendants deny a large number of claims based on their view of the Article 23-A analyses. But Defendants have assured the Court the Article 23-A analyses will be conducted in a good-faith, fair, and professional manner. *See* Fairness Tr. 12-13. In light of

these representations and the litigation risks associated with the NYCHRL claims, the sole discretion accorded to Defendants appears to be a fair concession.

Finally, the Court notes that the settlement includes significant programmatic relief that will likely ensure greater opportunities for applicants with criminal records.

Accordingly, this factor weighs strongly in favor of approval.

*     *     *

Weighed together, the Court finds that the *Grinnell* factors weigh in favor of the proposed settlement. For the foregoing reasons, the Court find the settlement, together with the distribution plan, to be fair, reasonable, and adequate.

## V.    THE ATTORNEY'S FEES AND EXPENSES ARE REASONABLE

The Class Counsel seek $750,000 in fees and costs as well as an incentive award to each lead Plaintiff of $15,000.

It is well-established that in a class action settlement like this one counsel may be entitled to a "reasonable fee." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, 49 (2d Cir. 2000) (directing courts to consider (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of the representation; (5) the fee's relation to the settlement; and (6) public policy considerations). Class Counsel are also entitled to be reimbursed for litigation costs and expenses. See *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). District Courts "may select 'either the lodestar or percentage of the recovery methods' to calculate fees." *Fresno County Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 68 (2d Cir. 2019) (quoting *Goldberger*, 209 F.3d at 45). Furthermore, in the Second Circuit, Class Plaintiffs may receive additional payments as "incentive awards." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

The proposed attorney's fee award is reasonable. If the Court were to apply the percentage method, the $750,000 fee award would fare poorly. The fee award exceeds the monetary recovery for the class, and courts usually do not award more than 33.3% of the monetary relief when applying the percentage method. See *Springer v. Code Rebel Corp.*, No. 16-cv-3492, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (describing award of 33.3% of a common fund as "well within the range of fee awards typically awarded"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587-88 (S.D.N.Y. 2008). However, courts are not obligated to use the percentage fee method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010). And the logic the percentage fee method is undermined in cases such as this one where the settlement involves significant programmatic relief.

Under the lodestar method, the proposed fee award appears to be quite modest. Based on time records submitted to the Court, class counsel argues for a lodestar amount of $1,732,875.50. Even if the Court were to make some downward adjustments to this number based on the hourly rates billed, the lodestar award amount would still exceed the fee amount. This strongly suggests that the fee award is reasonable.

The reasonableness of the fee in spite of the high percentage is confirmed by other *Goldberger* factors, particularly "public policy considerations." 209 F.3d at 50 (quotation omitted). This litigation concerns important consumer and civil rights. But because the employment positions at issue were seasonal and part-time, the monetary recovery was never going to be substantial even though litigation was sure to be costly and time-intensive. Fee awards that are large in relation to the monetary recovery are necessary to enable counsel to bring these kinds of cases. Arguably, the alternative would be to effectively lock low-wage workers out of the courthouse. Furthermore, the legal theory of the NYCHRL claims was

untested, and class counsel undertook significant risk by pursuing it. Additionally, the Court notes that the fee award was negotiated separately from the class relief. Weighing all of the relevant factors, the Court finds an award of $750,000 for fees and costs to be reasonable.

Finally, in light of the efforts Lead Plaintiffs expended for the benefit of the class, an incentive award of $7,500 for each Lead Plaintiff is appropriate. *See Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (describing payments ranging from $2,500 to $85,000).

## VI.  CONCLUSION

For the reasons stated, the Settlement is determined to be fair, reasonable, and adequate. Accordingly, Plaintiff's Motion for Final Approval of the Class Action Settlement is GRANTED.  Plaintiff's Motions for an Award of Service Payments to Class Representatives, and an Award of Attorney's Fees and Costs are also GRANTED.

The Clerk of Court is respectfully directed to enter judgment and to close this case.

This resolves Dkt. Nos. 105, 107, and 109.

SO ORDERED.

Dated: August 7, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge